382 So.2d 194 (1980)
State of Louisiana Through the Health and Social Rehabilitation Services Administration, Plaintiff Appellee,
In the INTEREST of the minor child Linda HOWARD.
No. 14056.
Court of Appeal of Louisiana, Second Circuit.
February 25, 1980.
*195 North Louisiana Legal Assistance Corp. by Elizabeth B. Matthews, Monroe, for defendants-appellants, Lois and Shirley Howard.
J. Carl Parkerson, Dist. Atty., by Walter Lee Perkins, Jr., Asst. Dist. Atty., Monroe, for plaintiff-appellee, State of Louisiana through the Health and Social Rehabilitation Services Administration.
Before PRICE, HALL and MARVIN, JJ.
HALL, Judge.
The parents of a 14-year-old daughter appeal from an order of the district court, sitting as a juvenile court, granting custody of the daughter to the Louisiana Health and Human Resources Administration, Division of Evaluation and Services, with physical custody being given to the Youth House of Ouachita, Incorporated. The order was rendered in an abuse or neglect proceeding initiated by the state pursuant to LSA-R.S. 14:403.
At the hearing, the parents advised the court that they had not been able to employ an attorney and could not afford to do so, and requested the court to appoint an attorney to represent them in the proceedings. The court ruled that there was no authority or procedure for a court-appointed attorney in this kind of proceeding, a civil matter, and refused the request.
The issue presented on appeal is whether the due process clause of the federal or state constitution requires appointment of counsel to represent indigent parents in an abuse or neglect proceeding brought under LSA-R.S. 14:403. We hold that due process mandates appointment of counsel to represent indigent parents in such a proceeding when the state seeks to remove the child from the custody of the parents for an indefinite or prolonged period of time, unless the right to counsel is knowingly and intelligently waived.
The Statutory Law
LSA-R.S. 14:403 appears in the Revised Statutes under Title 14, Criminal Law, Chapter 2, Miscellaneous Crimes and Offenses. The purpose of the statute is stated as follows:
"The purpose of this section is to protect children whose physical or mental health and welfare are adversely affected by abuse and/or neglect and may be further threatened by the conduct of those responsible for their care and protection by providing for the mandatory reporting of suspected cases by any person having reasonable cause to believe that such case exists. It is intended that as a result of such reports the protective services of the state shall be brought to bear on the situation in an effort to prevent further abuses, and to safeguard and enhance the welfare of these children. This section shall be administered and interpreted to provide the greatest possible protection as promptly as possible for such children."
Prior to amendment of subsection G of the statute by Act 664 of 1979, the amendment having gone into effect subsequent to the hearing, judgment, and appeal in this case, LSA-R.S. 14:403 established a procedure for prompt handling of child abuse and/or neglect situations outside of or in addition to proceedings provided for in the Code of Juvenile Procedure. State in Interest of Mason, 356 So.2d 530 (La.App. 1st Cir. 1977). The statute provided for investigation *196 by the parish child welfare unit or other appropriate agency and for an instanter order of removal and placement of a child upon affidavit and good cause shown. A hearing not more than 45 days after issuance of the instanter order or after filing of a petition by the district attorney was required. It was provided that the district attorney shall represent the interest of the state, which interest shall be the protection of the child and that the court may also appoint an attorney to represent the sole interest of the child. The court had jurisdiction to issue any order it deemed necessary for the protection and welfare of the child.
Subsection I of the statute provides any person knowingly or willingly violating the provisions of the statute shall be guilty of a misdemeanor and upon conviction shall be fined not more than $500 or imprisoned for not more than six months or both.
The 1979 amendment made several changes in the procedure. An order to take the child into custody may issue on the written verified complaint of the agency. In exceptional circumstances, the facts constituting reasonable grounds to believe the child is abused, neglected, or in need of care and that immediate removal of the child is necessary for his protection may be relayed to the court orally or telephonically and the court may issue its order orally. In this latter case, the written verified complaint must be filed within 24 hours after the child is taken into custody.
A hearing in accordance with the Code of Juvenile Procedure is required within 72 hours of the child's being taken into custody. If the child is continued in custody, the district attorney may file a petition in accordance with the Code of Juvenile Procedure to have the child adjudicated in need of care as defined in the Code. The district attorney shall represent the interest of the state, which interest shall be the protection of the child. If the child is continued in custody, a petition shall be filed within 30 days of the hearing to determine continued custody, and, if the petition is not filed, the child shall be released unless good cause is shown to continue the child in custody. The court may set the matter for an adjudication hearing without requiring an appearance or answer, but shall set the matter for hearing within 45 days from the filing of the petition. Except as otherwise provided in LSA-R.S. 14:403, the case shall be governed by the Code of Juvenile Procedure. The adjudication hearing and disposition would then be governed by the Code.
Articles 95 and 96 of the Code provide for the child's right to counsel and the appointment of counsel for the child if the parents are unable to afford counsel in accordance with LSA-R.S. 15:141, et seq. Neither LSA-R.S. 14:403, the Code of Juvenile Procedure, or any other statute, provides for the appointment of counsel for indigent parents in abuse or neglect or child in need of care proceedings.
The Instant Proceeding
The instant proceeding was initiated on March 27, 1979, by the filing of an affidavit by a social worker of the Office of Evaluation and Services setting forth instances of physical abuse of Linda Howard by her parents, failure of the parents to work or have visible means of support, neglect and uncleanliness in the home, medical neglect, and the necessity for removing the child from the custody of her parents for her protection. An instanter order for the temporary removal of the child from the custody of her parents and placement with the Department of Health and Human Resources was issued and executed, with a hearing being set for May 1, 1979.
On April 26 the district attorney filed a petition alleging facts of a similar nature and praying that the parents of the child be declared to be parents in need of supervision according to the Code of Juvenile Procedure and that custody of the child be continued with and granted to the Health and Social Rehabilitation Services Administration. The court ordered the parents, and two brothers of Linda, to show cause why they should not submit to psychological and/or psychiatric evaluations.
The matter came up for hearing on May 1. The parents announced they were not *197 ready to proceed because they did not have an attorney. When asked why they did not have an attorney, they replied it was because they could not afford one. They had been to Legal Aid which refused to handle the case. They talked to two private attorneys who told them they could not handle the case.
The court ruled that this was not a criminal matter and that the court had no way of appointing an attorney in a civil matter. The court advised the parents that they would be allowed to ask questions and present any evidence they wished. At a later stage in the hearing, the parent renewed their request which was again refused.
The record shows that the court conducted the hearing with the utmost fairness and consideration to the parents, often asking questions they might have asked, and the parents themselves did some limited questioning of the state's witnesses. They were given the opportunity to say what they wanted to. They did not call any witnesses in their own behalf.
The record also shows that the state was represented by a competent assistant district attorney, that the state's case was well-prepared and presented by the district attorney and the agency, and that 19 witnesses were called by the state, including a social worker, several school principals, neighbors of the family involved, and a psychologist who had examined Linda. The record also shows the parents had limited education, low I.Q.'s, and were, according to a psychological report, of borderline slow intelligence. Their indigency is amply demonstrated by the record, including the court's order allowing the appeal to proceed in forma pauperis.
At the conclusion of the hearing, the court found there was not enough evidence to make a firm and convinced finding that the parents consistently physically abused the child. The court found the family situation was far from wholesome, the parents had not exercised any appreciable degree of care and supervision of the children and were neglectful of the children. The court found Linda to be a severely physically and emotionally neglected child in need of care and the parents in need of supervision. The court's remarks demonstrated deep understanding and compassion, and that the court's approach in this kind of case is to get any child it takes away from a parent back to the parent as quickly as possible.
Judgment was rendered (1) ordering the custody of the child continued with the Louisiana Health and Human Resources Services Administration, Division of Evaluation and Services, with physical custody given to Youth House of Ouachita, Incorporated; (2) ordering the parents to submit to psychological evaluations, and to be allowed reasonable, supervised visitation; and (3) declaring the parents to be parents in need of supervision and the child to be a child in need of care and supervision.
Although initiated as an LSA-R.S. 14:403 abuse/neglect proceeding, the instant proceeding developed into a hybrid proceeding involving child in need of care, child in need of supervision, and parents in need of supervision adjudications as well, even though the procedural requirements of the Code of Juvenile Procedure for these latter proceedings were not precisely followed.
After judgment was rendered, the Northwest Louisiana Legal Assistance Corporation enrolled as counsel for the parents, perfected an appeal in forma pauperis, and is representing the parents before this court.
Motion to Dismiss Appeal
The state has filed a motion to dismiss the appeal because of mootness. It is shown that subsequent to the taking of the appeal in this case, the parents filed a petition in the juvenile court to regain custody of the child. Thereafter, an informal adjustment agreement (C.J.P. Arts. 42-44) was entered into between the district attorney and the parents, who were then represented by counsel who also signed the agreement, whereby it was agreed that the child shall remain at the Youth House, with weekend and holiday visitation with her parents during satisfactory behavior. The *198 agreement was not to exceed six months without approval of the court. The parents' petition to regain custody was dismissed.
Appellants, in response to the motion to dismiss, assert that the informal adjustment agreement was entered into to avoid a charge of theft lodged against the child, (presumably a delinquency petition based on commission of a theft), and that the parents have not in any manner acquiesced in the custody adjudication appealed from.
The informal adjustment agreement that the child remain at the Youth House not to exceed six months and the dismissal of the parents' petition to regain custody do not render the appeal from the custody adjudication moot. The subsequent proceedings did not modify or terminate the adjudication. It remains viable and in effect. Its indefinite duration extends beyond the term of the informal adjustment agreement. The correctness of the judgment appealed from remains at issue and a judgment of this court reversing and setting it aside would have actual effect on the rights of the parties to custody of the child. The appeal is not moot and the motion to dismiss is overruled.
The Constitutional IssueDue Process Appointment of Counsel for Indigent Parents
The determination of what procedural safeguards are required by due process depends on the nature of the proceeding and the nature of the right or interest affected by the proceeding. Cafeteria & Rest. Wkrs. U., Local 473 v. McElroy, 367 U.S. 886, 81 S.Ct. 1743, 6 L.Ed.2d 1230 (1961). The extent to which procedural due process must be afforded is influenced by the extent to which the person affected may be "condemned to suffer a grievous loss." Goldberg v. Kelly, 397 U.S. 254, 90 S.Ct. 1011, 25 L.Ed.2d 287 (1970).
The right or interest at issue in an abuse/neglect proceeding is the right of a parent to custody and control of his or her child. The integrity of the family and the right of a parent to raise his child has been recognized as a fundamental right or liberty protected by the Fourteenth Amendment. See Mayer v. State of Nebraska, 262 U.S. 390, 43 S.Ct. 625, 67 L.Ed. 1042 (1923); Pierce v. Society of Sisters of Holy Names, 268 U.S. 510, 45 S.Ct. 571, 69 L.Ed. 1070 (1925); Prince v. Commonwealth of Massachusetts, 321 U.S. 158, 64 S.Ct. 438, 88 L.Ed. 645 (1944); May v. Anderson, 345 U.S. 528, 73 S.Ct. 840, 97 L.Ed. 1221 (1953); and Stanley v. Illinois, 405 U.S. 645, 92 S.Ct. 1208, 31 L.Ed.2d 551 (1972). In Stanley, the Supreme Court held:
"The Court has frequently emphasized the importance of the family. The rights to conceive and to raise one's children have been deemed `essential,' . . . `basic civil rights of man,' . . . and `[r]ights far more precious . . . than property rights,' . . . . `It is cardinal with us that the custody, care and nurture of the child reside first in the parents, whose primary function and freedom include preparation for obligations the state can [n]either supply nor hinder.' . . . The integrity of the family unit has found protection in the Due Process Clause of the Fourteenth Amendment, . . . the Equal Protection Clause of the Fourteenth Amendment, . . . and the Ninth Amendment. (Citations omitted.) 405 U.S. at 651, 92 S.Ct. at 1212."
The interest of parents in the custody and control of their children is an interest or right subject to constitutional protection.
The next inquiry is into the nature of the proceedings. In an abuse/neglect proceeding, at least at the point where a petition is filed by the district attorney, the state seeks to remove custody of the child from the parents for an indefinite or prolonged period of time. The potential loss to the parent is grievous, perhaps more so than incarceration. It is, of course, settled law that due process requires the furnishing of counsel to indigent defendants threatened with incarceration. Gideon v. Wainwright, 372 U.S. 335, 83 S.Ct. 792, 9 L.Ed.2d 799 (1963); Argersinger v. Hamlin, 407 U.S. *199 25, 92 S.Ct. 2006, 32 L.Ed.2d 530 (1972). Likewise for persons facing commitment. Specht v. Patterson, 386 U.S. 605, 87 S.Ct. 1209, 18 L.Ed.2d 326 (1967). And, most importantly, likewise for children in delinquency proceedings. Application of Gault, 387 U.S. 1, 87 S.Ct. 1428, 18 L.Ed.2d 527 (1967).
In Gault, the court looked past the "civil" label given to juvenile proceedings to the true nature of the proceedings, reasoning that a litigant in such cases ". . . needs the assistance of counsel to cope with problems of law, to make skilled inquiry into the facts, to insist upon regularity of the proceedings, and to ascertain whether he has a defense and to prepare and submit it."
The Louisiana Supreme Court in State in Interest of Dino, 359 So.2d 586 (La.1978) recognized that a juvenile proceeding ". . . which may result in the removal of a child from the custody of his parents and in his confinement until the age of twenty-one years is not essentially different from a criminal trial." Although confinement is not a part of the loss or sanction which a parent facts in an abuse/neglect proceeding, the consequence of removal of a child from the parent's custody can hardly be said to be less severe. It should be noted also that although abuse/neglect proceedings do not necessarily involve criminal penalties, the conduct with which the parents are charged can be made the subject of criminal prosecution, resulting in a fine or imprisonment, or both.
The "civil" label given to juvenile proceedings overlooks the nature of the rights at issue and the relative power and ability of the antagonists. The contrast between the unrepresented parent, untutored in the law, unskilled in presenting his version of disputed facts, cross-examining witnesses, or working with documentary evidence, and the state, with its fiscal resources, expertise in child custody matters, represented by a competent district attorney, is striking and dramatic. The complex body of substantive law and evidentiary rules, and the relevant sociological, psychological, and medical data usually involved in abuse/neglect custody proceedings, are ordinarily beyond the understanding of most parents, particularly parents with the kind of background most often involved in this type proceeding.
The state's asserted interests of economy, efficiency, and informality in the conduct of juvenile proceedings must yield to the greater interest of society in preserving viable family units and of the parents in not being unfairly deprived of custody and control of a child.
The great majority of the state and federal courts which have considered the issue have held that due process requires appointment of counsel for indigent parents in proceedings where the state seeks to remove custody of a child from the parents. State v. Jamison, 251 Or. 114, 444 P.2d 15 (1968); Shappy v. Knight, 251 Ark. 943, 475 S.W.2d 704 (1972); In Re B, 30 N.Y.2d 352, 334 N.Y.S.2d 133, 285 N.E.2d 288 (1972); Dan forth v. State Department of Health and Welfare, 303 A.2d 794 (Me.1973); In Interest of Friesz, 190 Neb. 347, 208 N.W.2d 259 (1973); In re Rodriguez, 34 Cal.App.3d 510, 110 Cal.Rptr. 56 (1973); In re Adoption of R. I., 455 Pa. 29, 312 A.2d 601 (1973); State ex rel. Lemaster v. Oakley, 203 S.E.2d 140 (W.Va.1974); Christ v. Division of Youth and Family Services, 128 N.J.Super. 402, 320 A.2d 203 (1974); In re Welfare of Luscier, 84 Wash.2d 135, 524 P.2d 906 (1974); In re Welfare of Myricks, 85 Wash.2d 252, 533 P.2d 841 (1975); Cleaver v. Wilcox, 499 F.2d 940 (U.S.Ct. of App. 9th Cir. 1974); Smith v. Edmiston, 431 F.Supp. 941 (W.D.Tenn.1977); Davis v. Page, 442 F.Supp. 258 (S.D.Fla.1977); Brown et al. v. Guy et al., D.C., 476 F.Supp. 771.
Several states have required the appointment of counsel by statute. Ariz.Rev.Stat.Ann. § 8-225(A); Colo.Rev.Stat.Ann. § 22-1-6; Conn.Gen.Stat.Rev. § 17-66(b); Ga.Code Ann. § 24-2481.1; Idaho Code § 16-209; Kan.Stat.Ann. § 38-820; Minn.Stat. § 260-155; N.D.Cent.Code § 27-20-26; Ohio Rev.Code § 2151.351; Okla.Stat., tit. 10, § 1109(B).
Considering the fundamental and constitutional right of parents to the custody *200 and control of their children, the adversary nature of abuse/neglect custody proceedings which involve charges of conduct which may give rise to criminal prosecution, the grievous nature of the loss which parents face through indefinite or prolonged separation from their child, and the imbalance of the power and ability of the state to present its side of the case as opposed to that of the parents, we hold that a minimum standard of due process under both the federal and state constitutions requires that counsel be furnished at state expense to indigent parents faced with charges of neglect and the possibility of removal of their child from their custody for an indefinite or prolonged period of time, unless the parents knowingly and intelligently waive their right to counsel. Necessarily implicit in this holding is that the parents be advised of their right to counsel. This holding applies to proceedings initiated under LSA-R.S. 14:403 and to child in need of care proceedings initiated under the Code of Juvenile Procedure.
Courts reaching this same result have differed in their application of the rule to the specific proceedings involved. For example, Cleaver, supra, held that the right to appointed counsel should be determined on a case-by-case basis, and set forth certain criteria to be considered by the trial court. Davis, supra, imposed an absolute right to appointed counsel at every critical stage of the proceeding. Lemaster, supra, recognized that appointment of counsel was not necessary for a temporary change of custody under a statute providing for the state to take custody for a reasonable time in an emergency threatening the welfare, health, or safety of the child.
As pointed out in the discussion of the Louisiana statutory law above, LSA-R.S. 14:403, as amended, provides for the state, pursuant to court order, to remove a child from the custody of parents, for a hearing within 72 hours on continued custody, and then for a petition to be filed by the district attorney within 30 days. At the point where the petition is filed by the district attorney, the abuse/neglect proceeding is, in effect, converted into a child in need of care proceeding governed by the Code of Juvenile Procedure, and it is at this stage that the state ordinarily seeks removal of the child from the custody of the parents for an indefinite or prolonged period of time.
Articles 95 and 96 of the Code of Juvenile Procedure provide for a child's right to counsel and the appointment of counsel in accordance with LSA-R.S. 15:141, et seq. Article 51 provides for the issuance of a summons after a petition is filed and for service on the parents of a copy of the petition and a written statement of the right to be represented by an attorney and the right to have counsel appointed as provided in Article 95.
Application of the procedure established by the Code of Juvenile Procedure for advising children and their parents of the child's right to counsel and for the appointment of counsel for the child, to cases where parents are afforded the same right will satisfy the due process requirements in these latter cases. Specifically, in abuse/neglect proceedings brought under LSA-R.S. 14:403 and in child in need of care proceedings brought under the Code of Juvenile Procedure, from the time when a petition is filed, the provisions of Articles 51, 95, and 96 of the Code of Juvenile Procedure will apply and should be followed in connection with the parents' right to counsel.
For the reasons assigned, the judgment of the district court, sitting as a juvenile court, is reversed and set aside, and the case is remanded to the juvenile court for further proceedings consistent with this opinion and in accordance with law. Custody of the child, Linda Howard, is continued with the Louisiana Health and Human Resources Administration, Division of Evaluation and Services, with physical custody granted to the Youth House of Ouachita, Incorporated, pending appointment of counsel for the appellants within 15 days, and the holding of a new hearing within 45 days after the judgment of this court becomes final, otherwise, custody of the child to be returned to her parents.
*201 Costs of the appeal are assessed to the appellee, State of Louisiana through the Health and Social Rehabilitation Services Administration.
Reversed and remanded.