WICKER, Judge.
The mother of four minor children, S.N., age five; A.N., age three; A.N., age two; and M.N., age one-and-a-half months [all ages as of the commencement of these proceedings], appeals an adjudication and disposition under La.R.S. 14:403. The judge found the children in need of care, placed them in state custody, and gave Mrs. N. supervised visitation. The sole issue is whether or not Mrs. N. was entitled to the appointment of an indigent defender. We reverse and remand, but we continue the temporary order granting custody to the state pending the remand.
Mrs. N. and her four children went to a new car dealership in Gonzales, where she told the dealership that God had told her to come there and get a free truck. She and the children spent almost the whole day there, and the car dealer fed her and the children. He finally called the sheriff, and that department tracked down relatives in LaPlace. Mrs. N.’s brother came to pick her up and bring her home. This event triggered the state’s intervention into Mrs. N.’s family affairs.
A child protection worker visited Mrs. N. and found her and the children in a one-room house with no ceiling and a stove in the corner. This house was in the yard behind her father’s house, one of three houses and a trailer in the same yard. Mrs. N. explained that the worker came in the house without knocking. She also explained that she did not live in that house but in the house with her father and brothers and that she only stayed there sometimes. The worker demanded that Mrs. N. and her children report to the office, which she did. However, Mrs. N. testified that the workers kept her and the children waiting for hours in the cafeteria. The worker testified that she and others were secretly observing Mrs. N. while the processing was going on and that they observed her hitting *1179 the three- and two-year-olds very hard with her fist.
Then Mrs. N. tried to leave, and the workers tried to prevent her from leaving by blocking the door. When she refused to turn over the baby to the workers, the sheriff came and arrested her. The workers told her to report as soon as she got out of jail. The children, in the meantime, were placed in three separate foster homes.
Mrs. N.’s supervised visits with the children were first arranged to take place at her father’s house so that all the family could see the children. On one visit, Mrs. N. refused to turn the children over to the transportation worker whose job it was to take the children back to their foster homes. Mrs. N. testified, however, that her father had agreed to let the children stay with him but then changed his mind. She said she did not refuse to hand over the children but handed them over very politely. Her sister told her if she didn’t return the children that the sheriff would come and take them away. Mrs. N. testified that her sister pulled a knife on her while she was holding the baby. Then, after the children were gone, she pulled a knife on her sister. Although the sister was later admitted to the emergency room with a knife wound to the head, Mrs. N. claimed that the sister had a knife and may have stabbed herself. As a result of this incident, Mrs. N. was arrested and committed to a mental institution in Baton Rouge for seventy-two hours. She testified that the doctor told her he didn’t know why she was there. When asked whether she had left the hospital after three days against medical advice, her answer was inconclusive.
The workers testified that Mrs. N. was uncooperative in that she refused to submit to a drug screening [her father had told the workers or the sheriff that Mrs. N. and her boyfriend were cocaine users], she refused to cooperate with mental health counsel-ling, and she refused to give the geographic location of her new residence. Mrs. N., however, testified that she did everything the workers told her to do. She also testified that she had kept two appointments with the mental health worker but had missed one and that she was visiting her children at the office every month.
Mrs. N. testified that the only reason her children were taken away was that she was found in a house that wasn’t proper. She had, however, been to the housing authority and the sheriff’s office seeking shelter. She testified that she was neither losing her mind nor on drugs, despite what people said. Mrs. N. had made efforts to get help in recovering her children and had even gone to see a lawyer. At the time of trial, she was sometimes sleeping where her brothers lived and sometimes with a friend across the river. Before the children were taken away, she had a regular address and the five-year-old child went to LaPlace Elementary School. She had previously lived in a housing project for eight years.
The workers testified that Mrs. N. had public assistance of $458.00 per month, perhaps food stamps and AFDC combined, as well as a $60.00 per month child support payment from the father of her teenaged son who lives in Colorado.
When asked by the judge what her biggest complaint was, the worker testified that she was fearful Mrs. N. might harm the children, based upon the home visit which had resulted in the stabbing of her sister.
The judge informed Mrs. N. that he had sent someone to her address, prior to any hearing on this matter, to advise her that she had the right to an attorney but she wasn’t at that address. He questioned her about the current address, and that exchange indicates that perhaps the court records had an incorrect municipal number. Mrs. N. did clarify her address and added, “This is where I receive my mail.” Mrs. N. was not represented by an attorney at this hearing. The judge did appoint Mrs. N.’s present counsel [who had initially been appointed to represent the interests of these four children] to represent her in the event she wanted to ask for a rehearing or appeal his decision.
Mrs. N. failed to appeal timely, and her initial appeal was dismissed by this court for lack of jurisdiction. # 90-CA-39. Her *1180 attorney petitioned for an out-of-time appeal, alleging he had been unable to contact Mrs. N. regarding her intentions until after the appellate delays had run despite attempts to telephone her and contact her “at several rumored whereabouts.” The judge granted her out-of-time appeal. Mrs. N. claims now the judge erred in failing to provide her with an indigent defender and in failing to determine her indigency. She also asks us to look at the record for error patent.
La. C.J.P. art. 95 guarantees the right of the child to counsel. It does not guarantee that right to parents; but it provides that if the judge does appoint counsel for parents, the fee may not be charged to the state but must, if the parents are not indigent, be paid by the parents. Louisiana jurisprudence has established such a right.
We hold that due process mandates appointment of counsel to represent indigent parents in such a proceeding [La. R.S. 14:403] when the state seeks to remove the child from the custody of the parents for an indefinite or prolonged period of time, unless the right to counsel is knowingly and intelligently waived.
In Interest of Howard, 382 So.2d 194, 195 (La.App. 2d Cir.1980). In that case, the parents had requested and been denied appointment of counsel. Accord: State ex rel. Johnson, 475 So.2d 340 (La.1985); State in Interest of K. V, 524 So.2d 5 (La. App. 1st Cir.1988). The Supreme Court held at 342 in Johnson,
[T]he trial court apparently found that the parents were indigent, and that a failure to appoint counsel would make the abandonment proceedings fundamentally unfair to them. Procedures used to terminate a parent-child relationship are carefully scrutinized for fairness.... The trial court is required to make a case-by-case determination as to whether failure to furnish counsel to the indigent parents would violate due process.... (Citations omitted.)
We approve of the holding of the Second Circuit, and we specifically hold that due process requires that counsel be appointed for indigent parents in proceedings brought under La.R.S. 14:403. In this case, even the judge believed that Mrs. N. was entitled to be represented and sent someone from the sheriffs office to so advise her.
The judgment of adjudication is reversed, the disposition is set aside, and the case is remanded for further proceedings. Custody of the minor children, S.N., A.N., A.N., and M.N., is continued in the State of Louisiana through the Department of Health and Human Resources pending appointment of counsel for Mrs. N. within fifteen days and a new hearing within thirty days after this judgment becomes final.
REVERSED AND REMANDED.