743 So.2d 843 (1999)
STATE, in the Interest of R.C., R.C. and D.E., Plaintiff-Appellee,
v.
Ginger CLARKE and Billy R. Everett, Defendant-Appellant.
No. 33,023-JAC.
Court of Appeal of Louisiana, Second Circuit.
October 27, 1999.
*844 Billy Richard Everett, Appellant, in pro. per.
Audie Jones, Haughton, Counsel for Appellee, State of Louisiana through the Department of Social Services.
Michelle Dufour-Brown, Counsel for Appellee, Ginger Clarke.
Michael Wainwright, Shreveport, Counsel for R.C., R.C. and D.E.
Before NORRIS, C.J., and BROWN & PEATROSS, JJ.
PEATROSS, J.
This appeal arises from the trial court's approval of the Department of Social Service's ("the Department") plan to transfer guardianship of R.C., R.C. and D.E., ages 8, 8 and 3 respectively, the three minor children of appellant, Billy Everett, to their respective foster parents. Mr. Everett asserts 16 assignments of error and lists 10 issues presented to this court. Two of his assignments, numbers 5 and 10, are abandoned on appeal for failure to brief. Knotts v. Snelling Temporaries, 27,773 (La.App.2d Cir.12/6/95), 665 So.2d 657. The remaining assignments are consolidated into the following six issues: (1) whether the trial court erred in approving the plan of placing guardianship of R.C., R.C. and D.E. with their respective foster parents; (2) whether the trial court erred in not removing Social Services Specialist, Pam Jacobs Kenyon, as the foster worker; (3) whether the trial court erred in not clarifying its reasons for judgment rendered on March 2, 1999[1]; (4) whether the *845 trial court erred in not granting a request from Mr. Everett for production of documents; (5) whether the trial court denied Mr. Everett, his children and/or the prospective adoptive parent, Marsha E. Crnkovic, their due process rights throughout the child in need of care proceeding; and (6) whether the trial court erred in its decision as to the children's visitation with Mr. Everett. For the reasons stated herein, the judgment of the trial court is affirmed, but remanded with instructions.

FACTS AND PROCEDURAL BACKGROUND
On October 9, 1997, the Department received a call of neglect concerning R.C., R.C. and D.E. An investigation revealed that the mother, Ginger Clarke, had been arrested for battery on a police officer and resisting arrest which occurred when the officer was investigating the stabbing of Ms. Clarke's boyfriend. The officer reported that Ms. Clarke was intoxicated at the time of questioning and became violent, hitting the officer. The officer reported that the home was deplorable. There were no window panes and the door would not close completely. Bare mattresses lay on the floor among trash and clothing. The house was roach infested. The officer observed the youngest child, D.E., age 3, eating a roach. There was no food in the house. The children were filthy and unkempt. The officer also noted that D.E. had burn marks on the bottoms of his feet and that all three children appeared to have impetigo sores on them. Mr. Everett was incarcerated at that time and family members refused to take care of the children.
At 12:58 a.m. on October 10, 1997, Judge Gallagher issued an Oral Instanter Order which placed the children in the custody of the Department. Later that day, the Department filed a verified complaint. On October 13, 1997, a continued custody hearing was held and custody was continued with the Department. On November 12, 1997, a petition for child in need of care was filed. On December 1, 1997, both Ms. Clarke and Mr. Everett, with court-appointed attorneys, stipulated that the children were in need of care in accordance with La. Ch. C. art. 647. On December 16, 1997, a disposition hearing was held. Ms. Clarke and Mr. Everett were present at the hearing and stipulated to the Dispositional Report and Case Plan submitted by the Department. The plan was reunification with the mother. The trial court approved the plan and set the matter for judicial review on April 20, 1998. Mr. Everett and his court-appointed attorney were present at the April review. The Department's plan was again approved and set for review on October 26, 1998. At that time, Mr. Judd Tooke enrolled as counsel for the father and the matter was set for December 1, 1998. Neither Mr. Tooke nor Mr. Everett was present on December 1. The matter was set for contested dispositional and case review hearing on January 28, 1999. Ms. Clarke and her court-appointed attorney, the children and their court-appointed attorney and Mr. Everett and his attorney were all present at the review hearing. The Department submitted its case review and recommended a plan for the children, the goal of which was the transfer of guardianship to the children's foster parents. The basis for the Department's changing the plan was Ms. Clarke's failure to comply with the requirements of the plan of reunification. Therapy reports on the children, which were admitted into evidence without objection, also recommended transfer of guardianship to the foster parents. The children testified in chambers, expressing their desire to remain with the foster parents. Ms. Clarke also favored the Department's recommendation. *846 Mr. Everett testified, however, that he wanted guardianship of the children to be awarded to his friend, Ms. Marsha Crnkovic.
On March 2, 1999, the trial court issued written reasons for its decision, finding that it was in the best interest of the children to follow the Department's plan of working toward guardianship of the children with their respective foster parents. The two oldest children, R.C. and R.C., would remain with one set of foster parents in Blanchard, while the youngest child, D.E., would stay with another foster family in Shreveport. The plan was approved and the trial court further ordered visitation rights to the mother and reasonable contact with Mr. Everett, who was still incarcerated.[2] Judgment was rendered on April 22, 1999.
On May 11, 1999, Mr. Everett filed a motion for production of documents which was denied by the trial court. On May 18, 1999, Mr. Everett filed a motion to request clarification of judgment which was also denied by the trial court. Mr. Everett appeals.

DISCUSSION

Approval of the plan to place guardianship of the children with foster parents
As previously stated, on April 22, 1999, the trial court entered a Judgment of Disposition with respect to R.C., R.C. and D.E. which approved the Department's permanent plan to place guardianship with the children's respective foster parents.[3] In fashioning its permanent plan for the children, the Department is duty-bound to design a plan which is consistent with the best interests and special needs of the children. La. Ch. C. art. 675; State in the Interest of S.M., et al, 98-0922 (La.10/20/98), 719 So.2d 445. Likewise, the trial court, in reviewing such plan, is governed by the best interests of the children. Id.
Our review of the trial court's determination is governed by the manifest error standard. Rosell v. ESCO, 549 So.2d 840 (La.1989); Arceneaux v. Domingue, 365 So.2d 1330 (La.1978). Absent a finding that the trial court's judgment was either clearly wrong or manifestly erroneous, it will not be disturbed on appeal. Under the manifest error standard, the linchpin is whether the trial court's findings are reasonable; even if the appellate court feels its own evaluation of the evidence is more reasonable, the trial court's findings cannot be reversed if they are in fact reasonable. Lewis v. State, 94-2370 (La.4/21/95), 654 So.2d 311. Our review of the record reveals that the judgment of the trial court was, in fact, reasonable; and, therefore, we find no manifest error.
In October 1997, when the children were removed from Ms. Clarke's home, the Department offered a plan of reunification with Ms. Clark which set out conditions and requirements that she must meet in order to secure the return of her children. Since both Mr. Everett and Ms. Clarke agreed that the children were in need of care at that time, there was no objection to the Department's plan and the plan was approved by the trial court. Accordingly, the children were placed in foster homes. Over the course of the next 12 months, Ms. Clarke showed little, if any, progress in completing the conditions imposed by the Department. On several occasions, the Department offered her transportation and assistance in attending drug *847 rehabilitation programs and counseling. These offers of assistance were never accepted by Ms. Clarke. She exhibited a pattern of agreeing to attend scheduled sessions or appointments only to make excuses at the last minute why she could not attend. Ms. Clarke did not interact well with the children during the few visitations that she attended; and, at two of these visits, she had a strong odor of alcohol on her breath. In fact, Ms. Clarke acknowledged to the Department that she felt that her presence in the children's lives was disruptive and that they would have much better lives with the foster families than she could offer.
Mr. Everett provided the Department with the names of three relatives to contact regarding possible care for the children; however, none of the relatives responded to letters sent to them by the Department. Likewise, a couple residing in Mansfield, whose names were also provided by Mr. Everett, failed to contact the Department as Mr. Everett indicated they would. At the hearing on October 26, 1998, Mr. Tooke presented Ms. Crnkovic to the court as a possible guardian for the children. As previously stated, Ms. Crnkovic was a childhood friend of Mr. Everett and had agreed to take the children into her home. The Department conducted a preliminary home study on Ms. Crnkovic, the results of which were very positive. The record indicates that the Department believed that "[Ms. Crnkovic's home] could be a very good placement resource for the children." Based on the preliminary home study, on November 20, 1998, the Department recommended a permanent goal of transfer of guardianship to Ms. Crnkovic. The foster families, however, had also indicated their desire to adopt the three children; and, on January 20, 1999, the Department changed its recommendation to make the permanent goal transfer of guardianship to the foster families. While the Department had no concerns with Ms. Crnkovic's home study or otherwise, the Department stated in its letter to Judge Gallagher:
[Each of the children] have strong attachments to the foster parents and the agency believes their best interests will be served by remaining in these homes. The agency has a long history of working with both of these families and we are confident they will do everything in their power to assure that the children achieve all they are capable of. There are two parents in each of the homes to give the children love, care and guidance. Patty Williams, the therapist who has been seeing the two older children believes their interests will be best served by remaining in their current homes.
In letters to the Department regarding her evaluation of the children, Ms. Williams indicated that R.C., the young boy, was adjusting well to his foster family and it would be in his best interest to remain in an environment with consistency and security. Concerning R.C., the young girl, Ms. Williams indicated that to remove her from the foster home, after she had bonded with the family, could be devastating to the child and may result in the recurrence of behavior problems. In addition to the Department's and the therapist's recommendations, the court-appointed CASA volunteer also recommended that the children remain with the foster families. Most telling was the children's testimony in chambers that they wanted to stay with their foster families. The transcript of that testimony reveals a strong desire on the part of the children to remain in their current stable, loving and safe environments. Additionally, we note that Ms. Clarke was also in favor of the Department's plan.
Mr. Everett argues that it is in the best interest of the children to be placed with Ms. Crnkovic. We acknowledge the viability of Ms. Crnkovic as a candidate for guardianship of these children; however, based on the record before this court, we cannot say that the trial court was manifestly wrong in approving the *848 Department's plan. It is clear that the trial court had the best interests of the children at the forefront of its decision.
We note that Mr. Everett argues in his brief that voluntary acts of surrender were filed by him and Ms. Clarke in compliance with La. R.S. 9:422.3 through 9:422.14; and, therefore, the Department violated La. R.S. 9:422.8 by not transferring custody to Ms. Crnkovic. We find no such voluntary acts of surrender in this record and our review of this matter is limited to the evidence contained in the record on appeal. Urban Management Corp. v. Shreveport Airport Authority, 602 So.2d 1055 (La.App. 2d Cir.1992), writ denied, 606 So.2d 542 (La.1992). Likewise, attachments to appellate briefs do not constitute part of the appellate record; and, therefore, we are precluded from considering any such attachments. Id.

Failure to remove Pam Jacobs Kenyon as the foster worker
This was assigned as error by Mr. Everett, but was not briefed in his original brief on appeal. The Department did, however, address the issue in its original brief and Mr. Everett then included a response to the Department's argument in his reply brief. Rule 2-12.4 of the Uniform Rules for Courts of Appeal allows this court to consider as abandoned on appeal any assignment of error not briefed by the appellant. Since, however, there is some discussion of the issue in the Department's brief and Mr. Everett's reply brief, we will address the issue.
The Department argues that this issue was never brought before the trial court in any fashion at any stage of the proceedings; and, therefore, the assignment is without merit. Mr. Everett did not request Ms. Kenyon's removal when he testified before the trial court. Further, the Department states that there has been no evidence of any unprofessional conduct on the part of Ms. Kenyon.
Mr. Everett responds by including a number of factual assertions which indicate that he communicated his displeasure with Ms. Kenyon to the Department and the trial court on several occasions. He claims that his attorney and Ms. Crnkovic wrote letters to the Department about Ms. Kenyon and that he filed a petition seeking a protective order with the trial court in which he sought to have her removed from his case. This argument, however, is not supported by the record on appeal. Again, our review is confined to the record before us and facts referred to solely in the arguments, in brief or otherwise, are not considered record evidence in appellate court proceedings. Thomas v. Connolly, 31,447 (La.App.2d Cir.1/20/99), 726 So.2d 1052. We find no evidence in the record that Ms. Kenyon's alleged unprofessional performance was ever made an issue before the trial court. While Mr. Everett attaches several pieces of correspondence to his brief, as previously noted, such correspondence may not be considered as part of the record on appeal. Urban Management Corp., supra; Thomas, supra; Brown v. Brown, 595 So.2d 337 (La.App. 2d Cir. 1992). This assignment is without merit.

Denial of Mr. Everett's Motion to Request Clarification of Judgment and visitation
In his reasons for judgment, the trial judge stated:
Both the mother and father, however, have requested visitation and the court will direct that the plan be modified by the Department to make provisions for reasonable visitation by the mother and reasonable contact by the father. (Emphasis added.)
Likewise, the Judgment of Disposition ordered that the plan be amended to provide for "reasonable contact" with Mr. Everett. As incorporated into the judgment, however, the Department's plan does not provide any type of contact schedule with regard to Mr. Everett. As written, the plan provides only that he be kept informed of all proceedings relating to the children and that the agency will forward any cards and *849 letters to the children. There is nothing in the record to indicate that the Department has amended the plan, as ordered by the trial court, to particularize what "reasonable contact" by Mr. Everett with his children will include.
On May 18, 1999, Mr. Everett filed a motion for clarification. He argued that the judgment was vague and ambiguous, particularly with respect to the "reasonable contact" by him. We agree with Mr. Everett that he is entitled to know what type of contact he may have with his children. To ensure that Mr. Everett is afforded such contact with his children, we remand this matter to the trial court with instructions to order the Department to amend the plan to include a schedule detailing the contact Mr. Everett is to have with the children and to incorporate the same into the Judgment of Disposition.

Denial of Mr. Everett's Motion for Production of Documents
On May 11, 1999, two weeks after the Judgment of Disposition was rendered, Mr. Everett filed a motion for discovery requesting all transcripts and minutes of the child in need of care proceeding. The motion was denied on June 30, 1999, without reasons. Mr. Everett asserts that the trial court denied the motion without cause and that he had the right to the requested documentation, as it related to his biological children. We find that the trial court properly denied the motion.
At the conclusion of the continued custody hearing on October 13, 1997, and prior to the filing of Mr. Everett's motion, the trial court ordered discovery to all parties. At no time during the entire child in need of care proceedings did Mr. Everett or his attorney inform the trial court that discovery was not satisfied. Furthermore, the issue was never brought to the trial court's attention prior to, or during, the contested disposition hearing on January 28, 1999. We find no error in the trial court's denial of Mr. Everett's motion.

Constitutional claims
Mr. Everett argues that his constitutional right to due process was violated, as well as those of his children and Ms. Crnkovic. U.S. Const. Amend. XIV and La. Const. Art. I, Sec. 2. Mr. Everett submits that on five occasions he was not allowed to be present and submit evidence of an alternative placement of the children. He states that he was not contacted for over a year after he requested that his children remain in the custody of the state agency. He also claims that the trial court's approval of the Department's plan to eventually transfer guardianship to the foster families, and not Ms. Crnkovic, denied him due process.
As a preliminary matter, we note that Ms. Crnkovic is not and has never been a party to the child in need of care proceeding. Mr. Everett, therefore, may not assert a claim on behalf of Ms. Crnkovic. Any arguments regarding potential claims of Ms. Crnkovic are, therefore, not properly before this court and will not be considered.
With respect to Mr. Everett's claims regarding denial of his right to due process, our review of the record reveals that Mr. Everett was afforded due process. The determination of what procedural safeguards are required in order to meet due process standards depends on the nature of the proceeding and the nature of the right or interest affected by the proceeding. State in the Interest of Fisher v. New Bethany Baptist Church, 535 So.2d 1214 (La.App. 2d Cir.1988); State in the Interest of Howard, 382 So.2d 194 (La. App. 2d Cir.1980). In Mathews v. Eldridge, 424 U.S. 319, 96 S.Ct. 893, 47 L.Ed.2d 18 (1976), the Supreme Court listed three distinct factors in the determination of the nature of the process due in a particular proceeding: (1) the private interest affected by the proceeding; (2) the risk of erroneous deprivation of that private interest by the state's chosen procedure, and the value of any additional or *850 substitute procedural safeguards; and (3) the countervailing governmental interest supporting use of the challenged procedure. See also State in the Interest of A.C., 93-1125 (La.App. 2d Cir. 10/17/94), 643 So.2d 743.
In applying the foregoing to the case sub judice, we will first discuss the first and third factors, followed by an analysis of the risk of erroneous deprivation. Regarding the private interest affected, we recognize that a parent's right to the companionship, care, custody and management of his or her children is fundamental. Stanley v. Illinois, 405 U.S. 645, 92 S.Ct. 1208, 31 L.Ed.2d 551 (1972); State in the Interest of J.Y. v. J.D., 545 So.2d 547 (La.App. 2d Cir.1989); State in the Interest of Howard, supra. The Supreme Court, in Stanley, held:
The Court has frequently emphasized the importance of the family. The rights to conceive and to raise one's children have been deemed `essential,'... `basic civil rights of man,' ... and `(r)ights far more precious ... than property rights,'.... `It is cardinal with us that the custody, care and nurture of the child reside first in the parents, whose primary function and freedom include preparation for obligations the state can (n)either supply nor hinder.'... The integrity of the family unit has found protection in the Due Process Clause of the Fourteenth Amendment, ... and the Ninth Amendment. (Citations omitted.)
Regarding the third factor, the significant countervailing interest of the State is evident in La. Ch. C. art. 601, which states in part:
The purpose of this Title is to protect children whose physical or mental health and welfare is substantially at risk of harm by physical abuse, neglect, or exploitation and who may be further threatened by the conduct of others ... This Title is intended to provide the greatest possible protection as promptly as possible for such children. This Title shall be administered and interpreted to avoid unnecessary interference with family privacy and trauma to the child, and yet, at the same time, authorize the protective and preventive intervention needed to safeguard and enhance the health and well-being of children.
Finally, we find that the risk of erroneous deprivation of that interest, in light of the procedure afforded parents during a child in need of care proceeding, is slight. Louisiana statutory procedure does provide for notice to parents before parental rights are indefinitely or permanently terminated and provides an opportunity to appear and defend at an appropriate stage in the proceedings, such as the hearing to adjudicate a child "in need of care." See La. Ch. C. art. 636, et seq. At the inception of this proceeding in October 1997, Mr. Everett and Ms. Clarke stipulated that the children were in need of care, in accordance with La. Ch. C. art. 647. The minutes of the court indicate that Mr. Everett was present at every major stage of the proceeding. In fact, he was in agreement with the trial court at each stage of the proceeding until the contested dispositional review hearing on January 28, 1999. At that hearing, Mr. Everett was allowed to testify regarding his wishes for the children and to present evidence.
We note that stages during the proceeding when the trial court must determine whether the custody of the children should remain with the state pending further proceedings are "interim stages in which an expeditious determination of the best interests of the children is paramount." State in the Interest of Fisher, supra. Additionally, at such stages, the parent is not faced with permanent or indefinite termination of his right to custody and control of the child. Id. We find that the fact that Mr. Everett was not present in court for such minor proceedings as minute entries and continuances, and other such "interim stages," did not deprive him of due process of law. We also note that Mr. Everett was *851 represented, at all times, by counsel, either court-appointed or privately retained.
Mr. Everett also states that on January 25, 1999, he filed a petition for adoptive placement and transfer of custody of the children to Ms. Crnkovic. The trial court's refusal to grant the relief sought in that petition, according to Mr. Everett, denied him equal protection, was discriminatory and denied him access to the court. La. Const. Art. I, Sec. 3 and Art. I, Sec. 22. This argument is based on matters outside the record; and, therefore, we are not permitted to address this issue. Urban Management Corp., supra; Thomas, supra; Brown, supra.

CONCLUSION
For the foregoing reasons, the judgment of the trial court is affirmed, but remanded with instructions that the Department of Social Services be ordered to amend the permanent plan approved by the trial court to include a detailed schedule specifying what reasonable contact Mr. Everett is to have with R.C., R.C. and D.E. The permanent plan, as amended, shall be made a part of the Judgment of Disposition and filed into the record.
AFFIRMED, BUT REMANDED WITH INSTRUCTIONS.
NOTES
[1] In his motion for clarification of judgment, Mr. Everett refers to the judgment of May 2, 1999. His references, however, clearly indicate that he is requesting clarification of "reasonable contact" with his children as provided in the trial court's reasons for judgment entered March 2, 1999.
[2] Mr. Everett remains incarcerated at the time of this appeal, serving a 15-year sentence for attempted murder of his wife, Ms. Clarke. According to Mr. Everett's testimony, the two were divorced in 1997.
[3] We note that Mr. Everett complains that guardianship was placed with the foster families. The trial court's approval of the Department's plan, however, did not actually award guardianship to the foster families; rather, the plan was to continue the children's placement in foster care with the permanent goal being transfer of the children's guardianship to the foster families. Permanent guardianship has not yet been established.