803 So.2d 413 (2001)
Eva PASCHAL, Plaintiff/Appellee,
v.
Teresa HAZLINSKY, Defendant/Appellant.
Eva Paschal, Plaintiff/Appellee,
v.
Annie Ruth Paschal, Defendant/Appellant.
Nos. 35,513-CA, 35,514-CA.
Court of Appeal of Louisiana, Second Circuit.
December 19, 2001.
*415 Walter M. Caldwell, IV, West Monroe, Counsel for Appellants.
Rickey R. Hudson, New Orleans, Counsel for Appellee.
Before STEWART, GASKINS & PEATROSS, JJ.
PEATROSS, J.
This appeal arises out of a domestic disturbance that occurred on April 5, 2001. The hearing officer issued protective orders against Teresa Hazlinsky and Annie Ruth Paschal and assessed them with various medical costs arising out of the domestic dispute with their mother, Plaintiff Eva Paschal. A same-day appeal was granted, but Teresa and Annie Ruth, who were proceeding pro se, did not appear at the appeal hearing. When the matter was called for review by District Judge Michael J. Ingram and the daughters were not present, Judge Ingram ordered a 15-minute recess for court personnel to look for Teresa and Annie Ruth. When the daughters could not be located, Judge Ingram affirmed the recommendations of the hearing officer in toto, making such recommendations the judgment of the district court. Teresa and Annie Ruth subsequently hired an attorney, who filed a Motion for Appeal which contained an objection to the ruling of the hearing officer and a request for appeal. Judge Ingram denied the motion, noting on the order that, because Teresa and Annie Ruth failed to appear at the same-day appeal hearing, the ruling of the hearing officer had become the judgment of the district court. Teresa and Annie Ruth now appeal, asserting five assignments of error which primarily raise the following two issues: (1) whether the same-day district court review of the hearing officer's ruling denied Teresa and Annie Ruth due process of law and (2) whether the hearing officer erred in awarding various medical costs to Eva. While not specifically assigned as error, Teresa and Annie Ruth also challenge the merits of the hearing officer's ruling granting the protective orders. For the reasons stated herein, we affirm.

FACTS AND PROCEDURAL BACKGROUND
On the morning of April 5, 2001, Eva Paschal, age 63, and her husband, Wiley Paschal, had an argument over money Wiley had apparently started depositing his monthly social security and retirement checks into a separate account which was not accessible to Eva. She told Wiley "to get out;" and, after driving his school bus route, Wiley enlisted his two adopted daughters, Teresa and Annie Ruth, to assist him in retrieving his belongings from the house. Teresa and Annie Ruth are Eva's biological children; Wiley adopted both of them. Additional family history pertinent to the present dispute is as follows: Eva adopted Teresa's three children because Teresa's parental rights had been terminated for abandonment. In addition, *416 Teresa's husband, George, had been convicted of abusing one of the children. Jamie, 17 years old, is the youngest of Teresa's biological children who were adopted by Eva and Wiley and was present at the time this dispute occurred. Jamie is mentally retarded as a result of a car accident when he was five years old and requires special care.
When Wiley, Teresa, George and Annie Ruth arrived at Eva's and Wiley's house, Eva was on the telephone with another son-in-law, Robert, who is married to Patti, another of her daughters. On seeing that Teresa and Annie Ruth were with their father, Eva hung up from Robert and called the sheriffs department. Apparently, Robert also called the sheriffs department. Eva allowed Wiley to enter the house, but asked the others to leave. Annie Ruth was standing in the doorway and Eva tried to close the door to prevent her from entering the house. According to Eva, Annie Ruth pushed the door open and hit Eva in the chest causing a large bruise. As the struggle over the doorway continued, Teresa went around Annie Ruth and pulled the telephone cord out of the wall. Annie Ruth claims that Eva hit her with the telephone receiver and denies hitting Eva in the chest. Eva ran out of the house to her van to use her cell phone to again call the sheriffs department. She remained outside until the deputies arrived. Back inside the house, Jamie had entered the room with the others and was holding the telephone cord. Teresa claims that Jamie was the one who pulled the cord out of the wall and she asked him if "he had lost his mind." She testified that she then plugged the phone back in so that Wiley could call the sheriffs office himself to get "it on the record." When the sheriffs deputies arrived, they took statements from all involved and advised Wiley that, although he did not have to, it would be a good idea for him to get a few things and leave in order to diffuse the situation. Wiley, Teresa, George and Annie Ruth left the property.
Teresa then contacted the sheriffs office to ask what she could do about her mother, whom she alleged was crazy. She testified that someone at the sheriffs department advised her to seek a coroner's commitment ("CEC"), which she did, signing an affidavit stating that her mother had threatened to kill her. Eva was picked up the following morning and taken to E.A. Conway Psychiatric Ward for evaluation. Eva's personal physician intervened on her behalf and she was released in a few hours. While Eva was detained at the hospital, Wiley and the daughters were retrieving his belongings from the house.
All of the above prompted Eva to file for protective orders against Teresa and Annie Ruth on her own behalf and on behalf of Jamie. In addition to the testimony of those involved in the encounter, Eva introduced photographic evidence of the large bruise on her chest.[1] The hearing officer found that forcing entry into the house was "exactly" what was intended by the daughters and that this family "is obviously versed in such events." After noting the past problems in the family, the hearing officer opined that the dispute at issue should have involved only Eva and Wiley and that the daughters' actions in restraining and leaving bruises on their mother were inappropriate. In addition, she found that Teresa's actions in obtaining the CEC were in bad faith and "nothing short of fraudulent." The protective orders were issued and medical costs associated with treatment for the bruised chest were assessed against both daughters and *417 costs associated with the CEC were assessed against Teresa. Eva's counsel was given 30 days to submit proof of medical expenses. Teresa and Annie Ruth noted objection to the ruling and the hearing officer advised them in open court that the appeal would be heard at 2:00 p.m. that afternoon and told them where to go for the hearing. As previously stated, neither Teresa nor Annie Ruth were present at the appeal hearing; however, Eva's counsel was present. Due to Teresa's and Annie Ruth's failure to appear, Judge Ingram affirmed the hearing officer's ruling and, subsequently, denied the daughters' second request for an appeal.

DISCUSSION

Due Process
Appellants challenge the Fourth Judicial District Court's ("4th JDC") process for handling domestic abuse protective order matters such as this. Since June 2000, the 4th JDC has been practicing "same day appeals" of domestic violence matters, which are first heard by the hearing officer and, if requested by the losing party, is reviewed by the district judge the same day. Appellants argue that this "same day appeal" procedure resulted in a denial of their due process rights because they did not have time in which to prepare for, and, in particular, to hire an attorney to represent them, at the hearing before the district judge. We disagree.
First, we note that La. R.S. 46:2131 expressly states that one of the purposes of the domestic abuse assistance statutes is "to provide a civil remedy for domestic violence which will afford the victim immediate and easily accessible protection." La. R.S. 46:2136(G) and (H), dealing with protective orders, also express the importance of urgency with respect to domestic violence situations:
G. Immediately upon granting a protective order or approving any consent agreement, the judge shall cause to have prepared a Uniform Abuse Prevention Order, as provided in R.S. 46:2136.2(C), shall sign such order, and shall forward it to the clerk of court for filing, all without delay.
H. The clerk of the issuing court shall transmit the Uniform Abuse Prevention Order to the Louisiana Protective Order Registry, R.S. 46:2136.2(A), by facsimile transmission, mail, or direct electronic input, where available, as expeditiously as possible, but no later than the end of the next business day after the order is filed with the clerk of court.
We agree with Appellants that Title 46 does not provide a procedural framework for the hearing of these matters within the district court; such procedure would usually be contained in the local rules of the district court.[2] The absence of such a rule, however, does not render the practice a constitutional violation of due process.[3]
Generally, due process requires some kind of hearing and notice thereof. No one, however, has a vested right in any given mode of procedure. Lott v. State, through Department of Public Safety and Corrections, 98-1920 (La.5/18/99), 734 So.2d 617. Our state may determine the *418 process by which legal rights are asserted and enforced so long as a party receives due notice and an opportunity to be heard. Id. It is well established that due process, unlike some legal rules, is not a technical conception with a fixed content unrelated to time, place and circumstances. Fields v. State, through Department of Public Safety and Corrections, 98-0611 (La.7/8/98), 714 So.2d 1244. The determination of what procedural safeguards are required in order to meet due process standards depends on the nature of the proceeding and the nature of the right or interest affected by the proceeding. State ex rel R.C. v. Clarke, 33,023 (La.App.2d Cir.10/27/99), 743 So.2d 843. In addition, the United States Supreme Court has stated that due process is flexible and calls for procedural protections demanded by the particular situation. Morrissey v. Brewer, 408 U.S. 471, 92 S.Ct. 2593, 33 L.Ed.2d 484 (1972).
The practice of utilizing an initial hearing by a hearing officer in domestic violence cases facilitates resolution of these time sensitive matters in an expedient manner. In fact, this procedure allows all parties to participate in a contradictory hearing before the hearing officer and, where requested, allows for a second opportunity to be heard before the district court judge. All parties have notice of the initial hearing before the hearing officer and, if requested, are provided with notice of the time and place of the review hearing before the district court judge. Ultimately, the litigants will have judgment rendered in the matter in one day, whether it be a ruling of the hearing officer which is not appealed to the district judge or the ruling of the district judge on review from the hearing officer. We agree with Appellee that the practice of the 4th JDC "strikes a proper balance between the governmental interest of abating the epidemic levels of domestic violence and the citizen's right to a fundamentally fair and meaningful opportunity to be heard."
More specifically, in the case sub judice, we can find no support for the assertion that Appellants were not afforded due process in defending Eva's claims against them. Both Teresa and Annie Ruth were served with the form petition entitled Petition for Domestic Abuse Protection Pursuant to La. R.S. 46:2131, et seq., which gave them notice of the charges against them and informed them of the time and place of the hearing on the charges. Appellants chose not to hire an attorney to represent them at the hearing. The hearing was informal in procedure and all parties were allowed to testify and present evidence to the hearing officer. Appellants participated fully in the contradictory hearing but, after hearing all of the evidence, the hearing officer did not rule in their favor. Appellants requested review of the matter; the request was granted and Teresa and Annie Ruth were provided with the time and location of the hearing before the district judge. Appellants admit in their brief to this court that they failed to appear at the review hearing, but they offer no excuse or explanation for their absence. Parties who fail to avail themselves of the opportunities to be heard by the court, of which they admittedly were aware, may not complain that they were denied due process. In this regard, we note that Teresa and Annie Ruth could have appeared at the hearing before the district judge and requested additional time so that they could seek legal representation; instead, they simply chose not to appear. We find that the process afforded Appellants in this case was sufficient to satisfy due process requirements of the Louisiana and U.S. Constitutions. We further find, therefore, that the trial court properly affirmed the ruling *419 of the hearing officer and was correct in denying Appellants' subsequent motion for appeal.

Merits of granting of protective orders
Although not designated as an assignment of error, Appellants argue that the hearing officer's granting of the protective orders was manifestly erroneous. Specifically, Teresa and Annie Ruth contend that the hearing officer ignored the testimony of certain witnesses regarding the events of that morning and the action of the investigating sheriff's deputies. Our review of the jurisprudence applying the Domestic Abuse Assistance statutes does not reveal a standard of judicial review of protective order matters from the district court. Similar cases involving the issuance of orders, including injunctions and support orders, grant the trial court wide discretion in granting or denying such orders and in fashioning the appropriate relief. We conclude, by analogy, that the abuse of discretion standard is applicable to our review of the trial court's grant of a domestic abuse protective order under the Domestic Violence Assistance Act.
In the case sub judice, the hearing officer heard testimony from Eva and Wiley, Teresa and George and Annie Ruth. In addition, the hearing officer asked questions of several witnesses in order to gain a complete understanding of the dynamics of this family and the dispute at issue. The hearing officer weighed the credibility of the witnesses and concluded that the daughters had caused the bruise on Eva's chest (of which there was photographic evidence) and that they had physically restrained her at some point during the dispute. It is apparent to this court that Eva was fearful of her daughters even before the dispute occurred as evidenced by her call to the sheriff's department immediately upon seeing that Teresa and Annie Ruth were approaching her home. We find no abuse of discretion in the hearing officer's grant of the protective orders under the facts contained in this record.

Assessment of medical costs
An additional issue raised in this appeal concerns the hearing officer's assessment of costs other than court costs to Appellants. First, the medical expenses associated with treatment of the bruise on Eva's chest were assessed against both Teresa and Annie Ruth. Second, the costs associated with the attempted CEC of Eva by Teresa were assessed against Teresa only. Appellants suggest that assessing these non-court-related costs against them was beyond the scope of the power granted to the hearing officer by La. R.S. 46:2136 and 2136.1 and beyond the scope of the pleadings. They argue that they had no notice that they would be required to defend claims for these medical costs and expenses. We find no merit in this argument.
Paragraph 10 of the form petitions filed and served on Appellants in the case sub judice contains the following list of requested relief pertinent to Eva's claim: to pay costs of court in this matter; to pay attorney fees; to pay evaluation fees; to pay expert witness fees; and to pay cost of medical and/or psychological care for the petitioner, minor child(ren) and/or alleged incompetent. Each of the above items of relief was "checked" on both petitions. In addition, in the Prayer section of the petitions, it is requested, inter alia, that the defendant be ordered to appear and show cause why the items in Paragraph 10 should not be granted and for "all other equitable relief as the court deems proper and necessary."
Further, La. R.S. 46:2136 merely provides an illustrative list of items of relief which may be granted by the court in domestic violence cases. La. R.S. *420 46:2136.1, however, expressly states that "[a]ll court costs, attorney fees, evaluation fees, and expert witness fees incurred in furtherance of this Part shall be paid by the perpetrator of the domestic violence, including all costs of medical and psychological care for the abused adult ... necessitated by the domestic violence." We find that the form petition and the above statutory provisions provided Appellants with adequate notice that claims for costs other than actual court costs were sought by Eva. We further find that the medical expenses associated with the bruise on Eva's chest clearly fall within the medical costs as stated in the petition and the statute. Regarding the costs associated with the attempted CEC of Eva by Teresa, we note that Eva states in her brief that she has made no claim for any such costs; and, therefore suggests to this court that the issue is "largely moot." As such, we pretermit any discussion of this issue.

Eva's request for attorney fees
Eva argues in her brief that the hearing officer erred in failing to award her attorney fees. She did not appeal the ruling of the hearing officer, nor did she file an answer to the instant appeal. The issue of attorney fees is not, therefore, properly before this court and will not be considered. La. C.C.P. art. 2133; Shoreline Gas, Inc. v. Grace Resources, Inc., 34,517 (La.App.2d Cir.4/4/01), 786 So.2d 137.

CONCLUSION
For the foregoing reasons, the judgment of the trial court is affirmed. Costs of appeal are assessed to Appellants, Teresa Hazlinsky and Annie Ruth Paschal.
AFFIRMED.
NOTES
[1] The hearing officer noted that both daughters were "large" and "healthy" and that Eva was 63 years old and suffered from a heart condition.
[2] We strongly suggest that the 4th JDC adopt and publish a local rule setting forth the review procedure for rulings of hearing officers in domestic violence actions.
[3] In addition, we note that we disagree with Appellants that, in the absence of a local rule on point, the three- or ten-day period applicable to non-support matters should apply to domestic violence cases by analogy. As Appellee points out, matters of domestic violence require more expedient proceedings.