ANDREW FAIRBANKS

VERSUS

BROOKE BENINATE

NO. 20-CA-206

FIFTH CIRCUIT

COURT OF APPEAL

STATE OF LOUISIANA


ON APPEAL FROM THE TWENTY-FOURTH JUDICIAL DISTRICT COURT
PARISH OF JEFFERSON, STATE OF LOUISIANA
NO. 763-069, DIVISION "L"
HONORABLE DONALD A. ROWAN, JR., JUDGE PRESIDING


December 23, 2020


**STEPHEN J. WINDHORST**
**JUDGE**


Panel composed of Judges Jude G. Gravois,
Stephen J. Windhorst, and Hans J. Liljeberg


<u>**AFFIRMED IN PART; VACATED IN PART; REMANDED**</u>

**SJW**
**JGG**
**HJL**

COUNSEL FOR PLAINTIFF/APPELLEE,
ANDREW FAIRBANKS
    Terri M. Miles
    Rebecca Huskey

COUNSEL FOR DEFENDANT/APPELLANT,
BROOKE BENINATE
    Richard L. Ducote
    Victora McIntyre

COUNSEL FOR DEFENDANT/APPELLEE,
STATE OF LOUISIANA, DEPARTMENT OF JUSTICE
    Jeffrey M. Landry
    Alicia Edmond Wheeler
    David J. Smith, Jr.

**WINDHORST, J.**

In this custody dispute, defendant/appellant, Brooke Beninate, appeals the trial court's judgment denying her motion to declare La. R.S. 46:236.5 C unconstitutional, awarding plaintiff/appellee, Andrew Fairbanks, sole custody of their child, and restricting Ms. Beninate to supervised visitation. Ms. Beninate also appeals the awards of child support, attorney's fees and costs to Mr. Fairbanks. For the following reasons, we affirm the trial court's judgment, except as to the child support award. We vacate the child support award and remand for further proceedings.

**FACTS and PROCEDURAL HISTORY**

This case has a protracted history of conflict between the parents of C.B., who is four years old, related primarily to Mr. Fairbanks' efforts to obtain visitation and eventually custody. The parents, Ms. Beninate and Mr. Fairbanks, have never been married or lived together. Mr. Fairbanks has been identified as the child's biological father by scientific testing and has acknowledged the child since birth.

Mr. Fairbanks' efforts to obtain visitation of the child began on July 21, 2016, when he filed a petition to establish custody seeking visitation every other weekend and every other holiday. In that petition, Mr. Fairbanks asserted that Ms. Beninate had prevented him from seeing the child, even though he had been paying her child support.

During the course of these proceedings, Ms. Beninate has filed multiple petitions for protection from abuse, although none have been proven to have merit. She filed the first petition for protection from abuse on August 16, 2018, not long after Mr. Fairbanks filed his first petition seeking visitation. Ms. Beninate alleged that she suspected that her child had been physically and sexually abused by Mr. Fairbanks because he came home covered in bruises, had a busted lip, a purple toenail, was traumatized and was not the same after that. She asserted that Mr.

Fairbanks had exhibited physical violence in the past and alleged that he slapped their child in the face, backhanded and shoved him, and told him to "shut up." On August 16, 2018, the court issued an order of protection effective through September 5, 2018, in which Mr. Fairbanks was ordered to not go within 300 feet of their child. On August 30, 2018, approximately two weeks after filing the petition for protection from abuse, it was dismissed on Ms. Beninate's motion.

On August 28, 2018, Mr. Fairbanks filed a petition to set child custody, seeking formal recognition as C.B.'s biological father and joint custody with a specific custody and visitation plan. In response, Ms. Beninate asserted that it would be in the child's best interest to award her sole custody and Mr. Fairbanks supervised visitation. She again alleged that Mr. Fairbanks physically and sexually abused their child. After a hearing officer conference on November 20, 2018 relative to the issues raised in these pleadings, the hearing officer recommended that Mr. Fairbanks have visitation with his child twice a week for two hours; that the parties' counsel arrange a visitation schedule; and that Mr. Fairbanks pay child support and explore obtaining health insurance. These recommendations were adopted as an interim judgment of the court, and Ms. Beninate timely objected to them.

Soon after the interim judgment granting Mr. Fairbanks visitation was signed, on December 4, 2018, Ms. Beninate filed a second petition for protection from abuse based on the same previously-asserted allegations that Mr. Fairbanks emotionally, physically, and sexually abused their child. After a hearing, at which testimony was presented, the Commissioner found the petition unwarranted and dismissed it due to Ms. Beninate's failure to prove the allegations.

Pursuant to a stipulation by the parties, Dr. Karen Van Beyer conducted a custody evaluation on April 9, 2019. Mr. Fairbanks subsequently moved to implement Dr. Van Beyer's recommendations regarding custody, domicile, activities, vacations, holidays, and therapy.

On May 10, 2019, Mr. Fairbanks filed a first rule for contempt, stating that despite the interim judgment granting him visitation, Ms. Beninate had refused to allow him to see his child since August 2018 without her present. He asserted that he had only been permitted to see his child ten times in her presence, and that after these short visits with her and their child, she repeatedly texted and harassed him. In addition, he alleged that after he filed a motion to implement the custody evaluation, Ms. Beninate threatened to kill herself and their child if Mr. Fairbanks did not forego his pursuit of custody and visitation. Although Mr. Fairbanks stated that he did not believe Ms. Beninate would actually harm herself or their child, he requested that the court address her behavior and threats. The hearing officer considered this first rule for contempt at a May 28, 2019 hearing officer conference.

After the May 28, 2019 conference, the hearing officer recommended that Dr. Van Beyer's recommendations be made the judgment of the court and implemented. These recommendations were made an interim judgment of the court. The interim judgment provided that beginning on May 29, 2019, Mr. Fairbanks was entitled to visitation with his child twice a week for four hours, and after four weeks, an overnight visit. Ms. Beninate objected to Dr. Van Beyer's recommendations and the hearing officer's recommendations.

After the May 28, 2019 interim judgment, on June 6, 2019, Mr. Fairbanks filed a second rule for contempt, stating that Ms. Beninate continued to refuse to allow him visitation. He stated that she met him at the designated meeting place for visitation on May 29, 2019, but refused to allow him to take their child. He also alleged that while he was holding their child, Ms. Beninate physically pried him out of his arms causing their child distress. To document this incident, Mr. Fairbanks called the police and a complaint report was issued. In this rule for contempt, Mr. Fairbanks further asserted that Ms. Beninate did not allow him visitation on June 3, 2019, and that she continued to falsely accuse him of sexual abuse in the presence

of their child. At a July 11, 2019 hearing officer conference on the second rule for contempt, the hearing officer recommended that Mr. Fairbanks receive compensatory visitation with his child and that Ms. Beninate be found in contempt for violating the previous visitation order of the court and be ordered to pay Mr. Fairbanks $500.00 for attorney's fees and $270.00 in court costs. These recommendations were made an interim judgment of the court, and Ms. Beninate objected to them.

Ms. Beninate continued to refuse to comply with the interim court orders. As a result, on August 15, 2019, Mr. Fairbanks filed an emergency rule for sole custody, asserting the following: (1) since November 20, 2018, the hearing officer and custody evaluator have repeatedly recommended that Mr. Fairbanks be permitted to exercise visitation with the child but Ms. Beninate has prevented visitation from occurring; (2) Mr. Fairbanks believes the child is in danger with Ms. Beninate because she has threatened to kill the child and herself before following any court-ordered visitation; (3) Ms. Beninate has made disturbing allegations against Mr. Fairbanks, including that he is in a cult, a devil-worshipper, satanic demon, craves the blood of the child as human sacrifice, and performs black magic spells and curses; (4) Ms. Beninate abuses prescription narcotics; and (5) Ms. Beninate refuses to answer the door when he arrives at her house and that law enforcement can no longer assist him in attempting to facilitate the court-ordered visitation because there is a problem for every visit. Based on Ms. Beninate's refusal to abide by the court-ordered visitation and his belief that their child is in imminent danger of bodily harm, Mr. Fairbanks sought sole custody of their child.

After a hearing before the trial court on August 15, 2019, the trial court "denied" all of Ms. Beninate's objections to hearing officer recommendations and interim orders including those dated November 20, 2018, December 27, 2018, May 28, 2019 and July 11, 2019. The trial court referred the matter to the duty

commissioner and ordered Ms. Beninate to undergo a psychological evaluation with a court-appointed mental health professional to address why custody should not be updated.

On August 22, 2019, Mr. Fairbanks filed his third rule for contempt because Ms. Beninate had continued to deny him any visitation. Mr. Fairbanks outlined several dates for scheduled visitation with which Ms. Beninate refused to comply and asserted that she sends him a barrage of text messages bordering on harassment and making false allegations. Mr. Fairbanks further alleged that Ms. Beninate is in contempt of court for failing to pay him the attorney's fees and court costs awarded to him in the August 15, 2019 judgment. Mr. Fairbanks sought a judgment holding Ms. Beninate in contempt of court for refusing to comply with the July 11, 2019 judgment, refusing to allow court-ordered visitation, refusing to co-parent, and failing to pay him the previously court-awarded attorney's fees and court costs. He also sought additional attorney's fees and court costs for this rule for contempt.

After a hearing officer conference on September 11, 2019, the hearing officer recommended that (a) Mr. Fairbanks have sole custody of the parties' child; (b) Ms. Beninate have supervised visitation for two hours every Saturday, at her expense, at Council NOLA; (c) Dr. Van Beyer conduct an updated evaluation; (d) Dr. Raphael Salcedo conduct a mental health evaluation of Ms. Beninate; and (e) Ms. Beninate be found in contempt and pay court costs and attorney's fees to Mr. Fairbanks. These recommendations were made an interim order of the court, and Ms. Beninate objected timely. On this same day, Ms. Beninate filed a third petition for protection from abuse based on the same allegations as those asserted in her previous two petitions for protection from abuse. A judgment of dismissal of this petition was signed on September 30, 3019, again on Ms. Beninate's motion.

Once Mr. Fairbanks obtained custody of the child, he filed a motion to modify child support and sought child support from Ms. Beninate. After a hearing officer

conference on November 20, 2019 on this motion, the hearing officer recommended that Ms. Beninate pay $469.41 in child support based on imputed income. She objected timely.

Because Mr. Fairbanks temporarily obtained custody based on the interim judgment, Ms. Beninate filed a motion to declare La. R.S. 46:236.5 C unconstitutional, asserting that this statute establishes arbitrary procedures whereby a parent can lose custody of their child without the due process right to a meaningful hearing. In light of this, she argued that La. R.S. 46:236.5 C was unconstitutional, and that, as result, the interim judgment granting Mr. Fairbanks sole custody was void.

The trial court heard this matter on January 30, 2020 to address Ms. Beninate's motion to declare La. R.S. 46:236.5 C unconstitutional and her objections to the hearing officer's recommendations. After hearing argument from the parties, the trial court denied the motion to declare La. R.S. 46:236.5 C unconstitutional, stating that "none of what the hearing officer does is a final judgment." The trial court also indicated that the hearing officer makes recommendations, and as the trial judge, "I either adopt the recommendation of the hearing officer or I reject it and I institute my own judgment."

With regard to the custody and visitation issues, the following individuals testified at the trial court hearing: Dr. Allan Klein; Brandi Beninate; Shonell Dillon; Karen Campos; Zack Campos; Ms. Beninate; Dr. Rafael Salcedo; and Mr. Fairbanks.

Dr. Klein, a clinical psychologist, testified as an expert in the field of clinical psychology. He met with Ms. Beninate at her attorney's request to generate a report regarding her concerns about her child. In evaluating the situation, he met with Ms. Beninate for two sessions and reviewed a number of documents, including medical records, reports from Ms. Dillon, a clinical social worker, and a video of the child

sucking the trunk of an elephant. Dr. Klein testified that he found Ms. Beninate to be intact and noted nothing in her mental status that was concerning. He testified that she was very upset over how her child was removed from her home, that it was reasonable for her to be concerned about her child possibly being sexually abused, and noted that it was probably the most traumatic separation that he has ever observed. Dr. Klein did not meet with Mr. Fairbanks, the child or anyone other than Ms. Beninate regarding this matter.

Brandi Beninate, Ms. Beninate's sister, testified that she lived with Ms. Beninate and the child at their parents' home. She stated that Mr. Fairbanks was involved in an incident four years ago with her boyfriend, which she considered violent. She testified that Mr. Fairbanks "out of nowhere" pulled her boyfriend, Mr. Campo, off the couch and began wrestling with him and that she believed it was because he was jealous. She also testified that after the child visited with Mr. Fairbanks, she thought the manner in which he played with his superhero toys as a two year old was suspect because he would put them on top of each other in straddling positions. Brandi testified that after returning from a visit with Mr. Fairbanks, the child was distraught, that he had a burn mark under his toe one time, and that on one occasion he randomly started sticking a stuffed elephant down his throat, gagging himself so much that tears were coming out of his eyes, which Ms. Beninate videoed. Brandi further testified that the child never slept away from Ms. Beninate until he was removed from her custody.

Ms. Dillon, a clinical therapist, testified as an expert in the field of clinical social work. Ms. Dillon treated both Ms. Beninate and her child, but never met with Mr. Fairbanks. She met with the child weekly from approximately February 2019 until September 2019 for an hour with Ms. Beninate present to treat him for post-traumatic stress disorder. Ms. Dillon testified that the child spoke very little, and that she used play therapy to encourage him to express his feelings. On a couple of

occasions, the child took a child-like doll and hid it under the bed or dresser or in the closet; he would place the face of a doll at the groin of another doll; and he would also dismember, fight and/or throw certain dolls. Ms. Dillon testified that Ms. Beninate was very loving and encouraging towards her child, that she appeared to want the best for her child, and that the child was very attached to her. Ms. Beninate did not inform Ms. Dillon of her allegations that Mr. Fairbanks or his family was involved in a cult; that Mr. Fairbanks' eyes turn orange because of demonic possession; or that he puts the child in a cage and/or forces him to eat dog food or feces or places him in the middle of a circle with family members dressed in black.

Ms. Campos, the mother of Brandi's boyfriend, testified that she knew Ms. Beninate and her child and that they occasionally attended gatherings at her house over the years for holidays and other events. On one visit, Ms. Campos testified that when someone was singing "Jesus Loves You," the child screamed "No. Hate him." repeatedly. Mr. Campos, Brandi's boyfriend, testified that he knew Ms. Beninate, Mr. Fairbanks (from dating Ms. Beninate), and their child. He testified regarding the incident four years ago where Mr. Fairbanks pulled him off the couch and tackled him because he was jealous.

Ms. Beninate testified the child lived with her, her parents, and her sister Brandi until September 11, 2019 when he was placed in Mr. Fairbanks' custody. After their child's birth, Mr. Fairbanks would spend time with Ms. Beninate and their child at her house. In 2017, when Ms. Beninate started working, the child would spend time with Mr. Fairbanks at his house, but never spent the night. Ms. Beninate alleged that after the child began spending time at Mr. Fairbanks' house, his demeanor changed, that he no longer wanted to play outside, and that he was scared of baths and diaper changes. She also asserts that on July 25, 2018, upon return from a visit with Mr. Fairbanks, the child came home with physical injuries, and that soon after that, his behavior became sexual because he would position his

superheroes in sexual positions, he randomly asked to see her butt, and would stick his face in her butt. Ms. Beninate took the video of the child stuffing the elephant truck in and out of his mouth and testified that she did not prompt him to do that. The child also began to become visibly upset when it was time to go to Mr. Fairbanks' house for a visit. Because of the child's alleged behaviors and upon doctors' recommendation, Ms. Beninate took the child to a therapist, Ms. Dillon. Ms. Beninate further alleges that two or three times, Mr. Fairbanks allegedly told the child to shut up when he was babbling, backhanded him in the stomach on one occasion, and slapped the child in the face after the child had slapped him.

Mr. Fairbanks' counsel questioned Ms. Beninate regarding her previous allegations that Mr. Fairbanks' eyes turned orange because of demonic possession; that he has exercised MK-Ultra mind control over their child; that he and his family are members of a cult; that he drinks blood and participates in human sacrifice; and that he has held the child upside down and near drowned him. She attempted to explain these allegations by stating she was speaking figuratively and/or repeating things her child told her and things she found from her research on MK-Ultra mind control. Ms. Beninate admitted that she told Mr. Fairbanks he was going to have to kill her and her family before she would give their child to him, and that her goal is to keep Mr. Fairbanks from their child.

Mr. Fairbanks testified at trial that when the child was born and he went to the hospital to see him, Ms. Beninate and her mother asked him to leave and he was not allowed to see the child. Three months after the child's birth, he was asked to take a paternity test, which showed that he was the father, and then he was allowed to see the child. In December 2015, Mr. Fairbanks was allowed to visit the child at Ms. Beninate's house a few times a week. They started dating again and the visits increased, but when they broke up, he was allowed to see the child less often. Mr. Fairbanks testified that he was allowed to have his child outside of Ms. Beninate's

presence fewer than ten times. Even after interim orders were entered granting Mr. Fairbanks unsupervised visitation, Ms. Beninate continued to refuse to allow Mr. Fairbanks visitation with his child. As a result, Mr. Fairbanks eventually filed rules for contempt in an effort to have his visitation. Mr. Fairbanks testified that because of his efforts to see the child, Ms. Beninate sent him threatening text messages, such as "I will hit you in the head with a baseball bat. I will kill you."

Mr. Fairbanks testified that after the September 11, 2019 hearing at which the Commissioner awarded him temporary sole custody, he was told to go straight to Ms. Beninate's house to pick up the child and that officers would meet him there to assist. He testified that when he picked the child up from Ms. Beninate, the child was crying and told him he was crying because he did not have his shoes. Once Mr. Fairbanks told him they would go get some new shoes, he stopped crying immediately and did not have any problems with him once they got home.

Dr. Salcedo, a clinical psychologist, testified as an expert in the fields of clinical and forensic psychology. In 2019, the court appointed Dr. Salcedo to conduct a mental health evaluation of Ms. Beninate. In September, 2019, he conducted a clinical interview with Ms. Beninate, including the Minnesota Multiphasic Personality Inventory, met with her three times, and reviewed documents provided to him by Ms. Beninate and Mr. Fairbanks. Dr. Salcedo concluded that Ms. Beninate did not suffer from any major psychiatric disorder. Ms. Beninate informed him that she suffers from attention deficit hyperactivity disorder and receives Adderall for treatment of that disorder. Dr. Salcedo stated that this is common and does not result in any impairment relative to reality testing. He found Ms. Beninate to be in touch with reality and found nothing that would prevent her from functioning as a custodial parent or to support finding her delusional.

**ASSIGNMENTS OF ERROR**

Ms. Beninate asserts that the trial court erred in (1) denying her motion to declare La. R.S. 46.236.5 C unconstitutional; (2) adopting the hearing officer's September 11, 2019 recommendations as the court's judgment, instead of conducting a *de novo* trial and, thereafter, independently applying the C.C. art. 134(A) child custody "best interest" factors to the evidence; (3) retaining sole custody of the parties' child with his father Mr. Fairbanks; (4) retaining Ms. Beninate on supervised visitation at her expense; (5) adopting the hearing officer's recommendations that Ms. Beninate pay attorney's fees and court costs; and (6) in adopting the hearing officer's recommendations that Ms. Beninate pay child support.

**Law and Analysis: The Constitutionality of La. R.S. 46:236.5 C**

Ms. Beninate challenges the constitutionality of La. R.S. 46:236.5 C, which provides that:

> C. An expedited process for the establishment of paternity and the establishment and enforcement of support and other related family and domestic matters in district courts using hearing officers may be implemented as follows:
>
> (1) The judge or judges of the appropriate court or courts for the establishment of paternity or the establishment and enforcement of support and other domestic and family matters may appoint one or more hearing officers to hear paternity, support, and other domestic and family related matters. Domestic and family matters shall include divorce and all issues ancillary to a divorce proceeding; all child-related issues such as paternity, filiation, custody, visitation, and support in non-marital cases; all protective orders filed in accordance with R.S. 46:2131 et seq., R.S. 46:2151 et seq., and the Children's Code and all injunctions filed in accordance with R.S. 9:361, 371, and 372 and Code of Civil Procedure Articles 3601 et seq., which involve personal abuse, terrorizing, stalking, or harassment; and enforcement of orders in any of these matters, including contempt of court.
>
> (2) The hearing officer shall be a full-time or part-time employee of the court and shall be an attorney who has been in good standing with any state bar association for not less than five years and has prior experience in cases involving child support services.
>
> (3) The hearing officer shall act as a finder of fact and shall make written recommendations to the court concerning any domestic and

family matters as set forth by local court rule, including but not limited to the following matters....

Ms. Beninate argues that this provision is unconstitutional because it establishes an arbitrary procedure that allows the hearing officer to make "findings of fact" without administering oaths, taking testimony, or making a record of the hearing. Ms. Beninate asserts that the provisions allowing the trial judge to "accept, reject, or modify in whole or in part the findings of the hearing officer" and to receive additional information if needed or remand to the hearing officer, result in an arbitrary proceeding for a judge to decide a custody and a contempt of court case without a meaningful opportunity to be heard, confront witnesses and/or rebut evidence. Ms. Beninate also asserts that while the law provides for a *de novo* hearing before the trial court, these provisions do not coincide with the constitutional right to a *de novo* hearing. In light of this, Ms. Beninate asserts that this procedure deprives a parent of his or her due process rights to have a meaningful opportunity to be heard. She further argues that the trial judge's decision to adopt the hearing officer's recommendations indicates that he did not engage in his own best interest of the child analysis under C.C. art. 134 and that she was deprived of a *de novo* hearing.

Statutes are presumed to be constitutional, and any doubt as to the legislation's constitutionality must be resolved in favor of constitutionality. Moore v. RLCC Techs., Inc., 95-2621 (La. 2/28/96), 668 So.2d 1135, 1140; Polk v. Edwards, 626 So.2d 1128, 1132 (La. 1993). The party challenging the constitutionality of a statute bears the burden of proving clearly that the legislation is unconstitutional. In re American Waste & Pollution Control Co., 588 So.2d 367, 373 (La. 1001). The party must establish that the legislation is barred by a constitutional provision which restricts the power of the legislature to enact the particular legislation at issue. Id.

**The Facial Constitutional Challenge to La. R.S. 46:236.5 C**

We first address Ms. Beninate's challenge that La. R.S. 46:236.5 C is unconstitutional on its face. A facial constitutional challenge seeks more drastic relief than an as-applied challenge; therefore, the movant in a facial challenge bears an especially heavy burden. U.S. v. Salerno, 481 U.S. 739, 745, 107 S.Ct. 2095, 2100, 95 L.Ed.2d 697 (1987); LaPointe v. Vermilion Par. Sch. Bd., 15-432 (La. 6/30/15), 173 So.3d 1152, 1159-60. To meet this burden, Ms. Beninate must prove that **no set of circumstances exists under which the statute would be valid**, that is, **that the law is unconstitutional in all its applications**. Washington State Grange v. Washington State Republican Party, 552 U.S. 442, 449, 128 S.Ct. 1184, 1190, 170 L.Ed.2d 151 (2008); LaPointe, 173 So.3d at 1159-60. In determining whether a law is facially invalid, the court "must be careful not to go beyond the statute's facial requirements and speculate about hypothetical or imaginary cases." Id. at 160.

Ms. Beninate generally asserts that this procedure at issue deprives a parent of his or her due process rights to have a meaningful opportunity to be heard. Due process generally requires some kind of hearing and notice of that hearing. Paschal v. Hazlinsky, 35,513 (La. App. 2 Cir. 12/19/01), 803 So.2d 413, 417. But, no one has a vested right in any given mode of procedure. Lott v. State, through Department of Public Safety and Corrections, 98-1920 (La. 5/18/99), 734 So.2d 617, 621. States may determine the process by which legal rights are asserted and enforced so long as a party receives due notice and an opportunity to be heard. Id. at 621-622. It is well established that due process is not a technical conception with a fixed content unrelated to time, place and circumstances. Fields v. State, through Department of Public Safety and Corrections, 98-611 (La. 7/8/98), 714 So.2d 1244, 1251. Due process is flexible and calls for procedural protections demanded by the particular situation. Morrissey v. Brewer, 408 U.S. 471, 489, 92 S.Ct. 2593, 33 L.Ed.2d 484

(1972). The determination of what procedural safeguards are required in order to meet due process standards depends on the nature of the proceeding and the nature of the right or interest affected by the proceeding. State ex rel R.C. v. Clarke, 33,023 (La. App. 2 Cir. 10/27/99), 743 So.2d 843, 849.

The resolution of whether the administrative procedures are constitutionally sufficient to satisfy due process requires an analysis of the governmental and private interests that are affected. Mathews v. Eldridge, 424 U.S. 319, 334, 96 S. Ct. 893, 902, 47 L. Ed. 2d 18 (1976). The United States Supreme Court has set forth three factors to consider in determining whether due process rights are sufficiently protected: first, the private interest that will be affected by the official action; second, the risk of an erroneous deprivation of such interest through the procedures used, and the probable value, if any, of additional or substitute procedural safeguards; and finally, the Government's interest, including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirement would entail. Id. at 335.

With respect to the first factor, we recognize that the United States Supreme Court has declared that a biological parent's right to "the companionship, care, custody, and management" of his or her children is a liberty interest far more important than any property right. Santosky v. Kramer, 455 U.S. 745, 758-59, 102 S.Ct. 1388, 1397, 71 L.Ed.2d 599 (1982); In re A.J.F., 00-948 (La. 6/30/00), 764 So.2d 47, 55. The rights to conceive and to raise one's children have been deemed essential basic civil rights of man. Stanley v. Illinois, 405 U.S. 645, 651, 92 S.Ct. 1208, 1212, 31 L.Ed. 2d 551 (1972). A parent's interest in having a relationship with his or her children is without a doubt a liberty interest protected by the Fourteenth Amendment's due process guarantee. Ferrand v. Ferrand, 16-7 (La. App. 5 Cir. 8/31/16), 221 So.3d 909, 919, writ denied, 16-1903 (La. 12/16/16), 211 So.3d

1164, citing Troxel v. Granville, 530 U.S. 57, 84, 120 S.Ct. 2054, 2070, 147 L.Ed.2d 49 (2000).

As to the second factor, we find that the procedure afforded parents under La. R.S. 46:236.5C with both a hearing officer and the trial court makes the risk of erroneous deprivation of that interest slight. This Court has recognized that the purpose of La. R.S. 46:236.5 and the local rules pertaining thereto is to expedite the handling of domestic matters. Ackel v. Ackel, 06-646 (La. 5 Cir. 1/16/07), 951 So.2d 403 (2007). The practice of providing the parties an initial hearing with a hearing officer in custody cases facilitates resolution of these sensitive matters in a more expedient manner and provides a temporary resolution to, often times, a very volatile situation. With this practice, the parties, upon request, have the opportunity to be heard twice before two different individuals, including the hearing officer and, when an objection is timely filed, the trial judge. All parties receive notice of the initial hearing before the hearing officer and, if requested, the hearing before the trial judge.

In addition, both hearings follow well-established procedures. La. R.S. 46:236.5 authorizes the court-appointed hearing officers to act as finders of fact and provide written recommendations to the court concerning support, paternity, domestic violence protective orders, and other matters. The statute mandates that the hearing officer's written recommendations include a statement of the pleadings, findings of fact and law, including the hearing officer's conclusions thereon, and a proposed judgment. Yet, while the hearing officer makes findings of fact, conclusions, and interim recommendations based on the evidence presented before him, "findings of fact" and "conclusions" by the domestic hearing officer are only recommendations, and as elaborated hereafter, certainly do not constitute final judgments.

This Court has held that where a party timely objected to the hearing officer's recommendations, those recommendations did not become a final judgment, and the objecting party was clearly entitled to a *de novo* review of the hearing officer's findings by the trial court. Dugué v. Dugué, 17-525 (La. App. 5 Cir. 6/27/18), 250 So.3d 1174, 1178. The interim judgment is not a final judgment and has been found to be consistent with statutory directive of the hearing officer process. Ackel, 951 So.2d at 407.

Once a timely written objection is filed, the party objecting is entitled to a *de novo* contradictory hearing in the district court before the trial judge to whom the case is assigned, and the *de novo* hearing is promptly scheduled upon the filing of the objection. The trial judge then signs the interim judgment, which also sets the date for the *de novo* hearing.

The *de novo* hearing is of record, and rules of evidence apply. The parties may present evidence, sworn testimony, and argument before the trial judge, as in any other trial or contradictory evidentiary hearing.

The trial court must hear the evidence and review the hearing officer's recommendations *de novo*, and it "shall accept, reject, or modify in whole or in part the findings of the hearing officer." Dugué, 250 So.3d at 1178. Significantly, the burden of proof does not shift to the objecting spouse. In keeping with the intent of a *de novo* hearing, the burden of proof remains on the moving spouse who originally had the burden of proof. If after *de novo* consideration of the evidence presented, the trial court makes the same findings of fact and law as did the hearing officer, the court may adopt the hearing officer's recommendations in whole or in part. If it does not agree, the trial court may adopt part or none of the hearing officer's recommendations, and may fashion its own remedies and judgment. Thus, the trial court may rule as it deems appropriate on the remaining issues based on the relevant evidence admitted at the *de novo* hearing.

In <u>Ackel</u>, <u>supra</u>, this Court found this statutory scheme to be constitutional under both the Louisiana and United States Constitutions. This Court also held that La. R.S. 46:236.5 clearly contemplates that the Louisiana District Court Rules (hereafter LDCR) and local rules will provide the particulars regarding hearing officer procedures. Neither the LDCR nor the local rules of the Twenty-Fourth Judicial District Court exceed or improperly expand the statutory authority of the hearing officers. LDCR 35.8 and Local Rule Appendix 35.8-I provide that the hearing officer's recommendations shall be signed by the District Court Judge or Commissioner, and shall be deemed an **interim** order or judgment of the court. We find this procedure to be consistent with the statute, and, especially considering the temporary nature of the interim order or judgment, that it is not a violation of due process.

As noted in <u>Dugué</u>, <u>supra</u>, LDCR Rule 35.7 provides that the trial judge "may review the hearing officer's conference report, and shall accept, reject, or modify in whole or in part the findings of the hearing officer and give them such weight as deemed appropriate **based on the evidence adduced at the hearing**." [Emphasis added.][1]

The basis of our decision in <u>Dugué</u>, <u>supra</u>, was that the trial court committed reversible error when it required proof of a material change in circumstances before modification of the interim judgment would be considered. In doing so, the trial court effectively deemed the interim judgment to be a final judgment, which was a misapplication of La. R.S. 46:236.5 C and the applicable rules. Due process in <u>Dugué</u> required adherence to the procedure set by La. R.S. 46:236.5 C and the applicable rules, which have been properly applied in the case before us. Those

---

[1] LDCR Rules 35.0–35.9 non-domestic violence hearing officer conferences. The Twenty-Fourth Judicial District Court Local Rules can be found in the LDCR Appendices, App. 35.0–35.8 under "24th JDC."

statutory provisions and rules clearly make the interim judgment a temporary one which the trial court may accept or discard in whole or in part at the *de novo* hearing.

We recognize the possibility that in infrequent cases, an interim order may impose a temporary obligation, deprivation, or hardship on a spouse which might later be determined by the trial court to be unnecessary or inappropriate. However, we believe that there is an equal or greater possibility that an intolerable or undesirable condition might be unnecessarily prolonged while awaiting discovery and trial in the absence of an impartial, albeit informal, hearing officer conference. Further, hearing officer conferences often resolve differences between spouses permanently, and result in judgments avoiding lengthy, stressful, and very costly litigation.

With the foregoing procedures in place, all parties have the opportunity to present their positions, arguments, and evidence, and the hearing officer and the trial court consider the merits of each case based on a full record as presented by the parties. Taking this into consideration, as to the third factor, we find that this process sufficiently balances the governmental interest in expeditiously and efficiently handling domestic matters and protecting individuals' right to a fundamentally fair and meaningful opportunity to be heard.

Considering the foregoing, we find the procedures set forth in La. R.S. 46:236.5 satisfy the due process requirements of the Louisiana and United States Constitutions, and are facially constitutional. Ms. Beninate's argument that these procedures deprived her of due process is without merit.

**The Constitutional Challenge As Applied to Ms. Beninate**

We also find no support for Ms. Beninate's argument that she was not afforded due process in this custody dispute with Mr. Fairbanks. This Court has held that the local system implemented by the Twenty-Fourth Judicial District Court in Jefferson Parish under La. R.S. 46:236.5 is in accord with the authority granted by that statute.

<u>Ackel</u>, 951 So.2d at 407. As required by the statute, Ms. Beninate received notice of all proceedings, which informed her of the time and place of the hearing and the issues to be addressed.

Ms. Beninate has been represented by various attorneys throughout most of these proceedings, and new counsel enrolled to represent her on September 10, 2019 before the September 11, 2019 hearing officer conference. In addition, as asserted by Ms. Beninate, the hearing officer conference was informal, but all parties were allowed to state their positions and present evidence to the hearing officer. She participated fully in the hearing officer conference, and after the hearing officer made recommendations that she disliked, she exercised her right to object, indicating that she was seeking a *de novo* hearing by the district court. Upon her objection to the September 11, 2019 hearing officer recommendations, the *de novo* hearing was promptly set for October 24, 2019. That date was later continued to January 30, 2020 on Ms. Beninate's motion.

Ms. Beninate was present and represented at the *de novo* hearing before the district court. She presented multiple witnesses, including expert testimony, evidence, and had the opportunity to cross-examine Mr. Fairbanks' witnesses, all of which the trial court heard and considered in reaching its conclusions. The mere fact that the trial court adopted the hearing officer's recommendations does not indicate that Ms. Beninate's due process rights were violated, or that the hearing was not genuinely *de novo*. In addressing her motion to declare La. R.S. 46:236.5 C unconstitutional, the trial court stated that nothing the hearing officer does is a final judgment, and that the court can adopt the recommendations or reject them and institute its own judgment.

The purpose of the hearing officer procedures is to expedite the handling of domestic cases, as set forth in La. R.S. 46:236.5 C: "An expedited process for the establishment of paternity and the establishment and enforcement of support and

other related family and domestic matters in district courts using hearing officers may be implemented as follows…." This purpose would be defeated if Ms. Beninate were allowed to achieve her stated intended purpose, which was to prevent visitation by the child's father indefinitely, contrary to the recommendation of the hearing officer and later, the testimony of experts. As previously stated, allowing this behavior on her part to continue posed a greater injustice than implementing the temporary interim order after a hearing officer conference.

Additionally, we note that Ms. Beninate's refusal to comply with the court orders, which were intended to facilitate Mr. Fairbanks' right to visitation with his child, is ultimately an important part of the catalyst that made it necessary for immediate enforcement of the interim judgment. Thus, Ms. Beninate's own actions in depriving Mr. Fairbanks of his rights caused what she now claims is a violation of her rights. The hearing officer procedures consequently allowed the court to ensure that the constitutional rights of all the parties were recognized and enforced and that the fundamental needs of the child were met.

In light of the foregoing, we do not find this statute unconstitutional as applied to Ms. Beninate.

**Custody and Visitation**

In her second, third and fourth assignments of error, Ms. Beninate asserts that the trial court erred in adopting the hearing officer's recommendations as the court's judgment, instead of conducting a *de novo* trial and independently applying La. C.C. art. 134(A) child custody "best interest" factors to the evidence; awarding sole custody of C.B. to Mr. Fairbanks; and restricting Ms. Beninate to supervised visitation.

Ms. Beninate asserts that the trial court did not conduct a true *de novo* hearing on her objections to the hearing officer's recommendations. The basis for this argument is primarily that the trial court came to the same conclusions and rendered

the same decision as the hearing officer. Contrary to her assertion, the record clearly indicates that the trial judge conducted a full trial *de novo*, as required by La. R.S. 46:236.5 C. On January 30, 2020, the trial court conducted a hearing and addressed Ms. Beninate's motion to declare La. R.S. 46.236.5 C unconstitutional, as well as issues regarding custody and visitation. Several witnesses, including multiple experts, testified, and the parties formally introduced evidence. Ms. Beninate had the opportunity to question and cross-examine the witnesses, to present evidence, and to present arguments to the court supporting why she should have custody, more visitation and/or unsupervised visitation. The record shows the trial court conducted a full hearing and ultimately agreed with the hearing officer's recommendations. Thus, this assignment of error lacks merit.

Ms. Beninate next challenges the trial court's custody and visitation rulings. In resolving custody issues, the primary consideration is whether the custody arrangement is in the best interest of the child. La. C.C. art. 131, 134. La. C.C. art. 134 sets out fourteen non-exclusive factors for the court to consider in awarding custody.[2] The trial court is not bound to make a mechanical evaluation of all the factors in La. C.C. art. 134, but should decide each case on its own facts in light of those factors. Robertson v. Robertson, 10-926 (La. App. 5 Cir. 4/26/11), 64 So.3d 354, 363. These factors are not exclusive, but are provided as a guide to the court,

---

[2] The relevant factors included: (1) The potential for the child to be abused, as defined by Children's Code Article 603, which shall be the primary consideration; (2) The love, affection, and other emotional ties between each party and the child; (3) The capacity and disposition of each party to give the child love, affection, and spiritual guidance and to continue the education and rearing of the child; (4) The capacity and disposition of each party to provide the child with food, clothing, medical care, and other material needs; (5) The length of time the child has lived in a stable, adequate environment, and the desirability of maintaining continuity of that environment; (6) The permanence, as a family unit, of the existing or proposed custodial home or homes; (7) The moral fitness of each party, insofar as it affects the welfare of the child; (8) The history of substance abuse, violence, or criminal activity of any party; (9) The mental and physical health of each party. Evidence that an abused parent suffers from the effects of past abuse by the other parent shall not be grounds for denying that parent custody; (10) The home, school, and community history of the child; (11) The reasonable preference of the child, if the court deems the child to be of sufficient age to express a preference; (12) The willingness and ability of each party to facilitate and encourage a close and continuing relationship between the child and the other party, except when objectively substantial evidence of specific abusive, reckless, or illegal conduct has caused one party to have reasonable concerns for the child's safety or well-being while in the care of the other party; (13) The distance between the respective residences of the parties; (14) The responsibility for the care and rearing of the child previously exercised by each party. La. C.C. art. 134.

and the relative weight given to each factor is left to the discretion of the trial court. Id. Each child custody case must be viewed in light of its own particular set of facts and circumstances with the paramount goal of reaching a decision that is in the best interest of the children. Id.; Harvey v. Harvey, 13-81 (La. App. 3 Cir. 6/5/13), 133 So.3d 1, 3, writ denied, 13-1600 (La. 7/22/13), 119 So.3d 596. On appellate review, the trial court's custody determination is entitled to great weight and will not be disturbed absent a clear showing of an abuse of discretion. Johnson v. Clofer, 18-119 (La. App. 5 Cir. 6/27/18), 251 So.3d 597, 600; Bridges v. Bridges, 09-742 (La. App. 5 Cir. 2/9/10), 33 So.3d 914, 918.

One of the most relevant factors to this case is the willingness of each party to facilitate and encourage a close and continuing relationship between the child and the other party. The record clearly indicates that Ms. Beninate has refused to facilitate or encourage a relationship between the child and Mr. Fairbanks. A biological parent's right to "the companionship, care, custody, and management" of his or her child is not limited to one parent but instead applies fully to both biological parents. Mr. Fairbanks has exhibited great patience in attempting to forge a true relationship with his child while he was in Ms. Beninate's custody. When Ms. Beninate and Mr. Fairbanks were involved in a relationship, Mr. Fairbanks was allowed to spend time with the child on an informal basis. When this relationship ended, however, Ms. Beninate's willingness to allow Mr. Fairbanks time with his child deteriorated to the point where she testified that her intent is prevent him from ever seeing his child.

On multiple occasions, Mr. Fairbanks, by court order, has been granted visitation with his child only to have Ms. Beninate take extreme measures to frustrate all his attempts at visitation. Ms. Beninate resorted to nefarious allegations against Mr. Fairbanks as means to avoid allowing him visitation with his child. These allegations have proven baseless throughout this litigation as reflected by not only

her own dismissal of multiple petitions for protection from alleged abuse, but also the complete lack of support for her allegations, and by the increasing outrageousness of the unsupported allegations. In addition, the record indicates that Ms. Beninate filed the petitions for protection from abuse either after Mr. Fairbanks sought or was awarded visitation and/or custody of the child. Because of Ms. Beninate's refusal to comply with court orders, Mr. Fairbanks had to resort to filing three contempt of court proceedings in an effort to enforce his right to visitation. Ms. Beninate's actions resulted in Mr. Fairbanks not seeing his child for over a year.

Given the course of these proceedings, we do not find any abuse of discretion or manifest error on the part of the trial court. In fact, we see no other option but to award sole custody to Mr. Fairbanks. While this removed the child from his current environment, consideration of that factor does not outweigh other factors, and is not a sufficient basis to deprive one parent of any contact with his or her child.

The record shows that Mr. Fairbanks can provide the child with love, affection and other emotional support, as well as education, food, clothing, medical care and other material needs. He is employed, paid child support regularly when Ms. Beninate had custody, and lives in stable home environment with his parents. It is also clear that Mr. Fairbanks loves and cares for the child. Mr. Fairbanks has also exhibited a healthy moral fitness, and is mentally and physically capable of caring for the child. Further, the record indicates that other members of Mr. Fairbanks' family want to develop a relationship with the child and can assist him with caring for the child. Thus, considering the record in its entirety and for the reasons stated above, we find no abuse of discretion in the trial court's award of sole custody to Mr. Fairbanks.

Ms. Beninate also challenges the judgment's restriction of only granting her supervised visitation with the child. The trial court has vast discretion in custody determinations. When considering the safety and best interest of the child, ordering

supervised visitation is within the trial court's vast discretion. <u>Guidry v. Guidry</u>, 18-639 (La. App. 5 Cir. 5/22/19), 274 So.3d 709, 715.

"Frequent and continuing contact" with each parent is important. La. R.S. 9:335. Ms. Beninate, however, testified that she only exercised her right to supervised visitation twice, explaining that it was expensive, emotional for both of them to be together in a strange place, and the child had no reaction to her at the visits. Although we recognize the distressing nature of supervised visitation particularly after having sole custody of a child, Ms. Beninate's failure to exercise that visitation while also seeking custody and/or unsupervised visitation does not present well for her case. Instead of continuing her relationship and contact with her child through supervised visitation and exhibiting to the court a willingness to cooperate with court orders and a genuine commitment to maintaining her relationship with her child regardless of the strain some measures may impose on her, Ms. Beninate forewent any contact with her child for whom the change was clearly disconcerting and perplexing. In light of this and the unsettling nature of Ms. Beninate's behavior relative to Mr. Fairbanks, we do not find the trial court abused its discretion in ordering supervised visitation for two hours every Saturday at her expense to Ms. Beninate. There is nothing to prevent Ms. Beninate from seeking to lift the supervision restriction as she exhibits an ability to cooperate with court orders and Mr. Fairbanks and restores her relationship with the child through supervised visitation.

**Imposition of Court Costs and Attorney's Fees for Contempt**

Ms. Beninate asserts that the trial court erred in ordering her to comply with the hearing officer's recommendation that she pay attorney's fees and court costs due to her contempt finding. After the September 11, 2019 hearing officer conference, the hearing officer found Ms. Beninate in contempt because she

repeatedly failed to comply with court orders granting Mr. Fairbanks visitation with his child.

La. R.S. 13:4611 provides that courts may punish a person adjudged guilty of contempt of court for disobeying an order for the right of custody or visitation and award attorney fees to the prevailing party in a contempt of court proceeding. The plain reading of this provision indicates that the Legislature has chosen to authorize awards of attorney fees under this statute to a party who successfully prosecutes a motion for contempt. Luv N' Care, Ltd. v. Jackel Int'l Ltd., 19-749 (La. 1/29/20), — So.3d —, 2020 WL 499164.

The record is clear that (1) Ms. Beninate had not allowed Mr. Fairbanks to see the parties' child since the hearing officer first recommended Mr. Fairbanks have visitation on November 20, 2018; (2) Ms. Beninate refused to allow Mr. Fairbanks visitation with the child out of her presence; (3) Ms. Beninate did not deny these facts and told the hearing officer Mr. Fairbanks was not allowed to see their child; (4) Mr. Fairbanks verified to the hearing officer that he was denied visitation and access to his child on each of the dates identified in his third rule for contempt and that on each of the occasions listed in his third rule for contempt he personally went to Ms. Beninate's residence and knocked on the door with no successful result as no one answered. It was undisputed that Mr. Fairbanks had not been allowed by Ms. Beninate to exercise his court-ordered visitation when he attempted to retrieve the child from Ms. Beninate for that purpose.

In similar circumstances, another appellate court affirmed the trial court's judgment finding the mother in contempt of court and ordering her to pay the father's attorney's fees due to her failure to enforce the minimum visitation requirement to which father was entitled under the parties' consent judgment. The father in this case was also prevented from having visitation with child for months despite active

efforts for visitation.  LeBlanc v. LeBlanc, 06-1307 (La. App. 3 Cir. 3/7/07), 953 So.2d 115, 123.

Considering the foregoing, we find no abuse of the trial court's discretion in ordering Ms. Beninate to pay Mr. Fairbanks' attorney's fees and court costs for the contempt proceedings.

**Child Support**

On November 20, 2019, the hearing officer recommended that Ms. Beninate pay $469.41 in child support based on imputed income, and she timely objected. After the January 30, 2020 hearing, the trial court adopted this recommendation.  On appeal, Ms. Beninate argues that the trial court erred in adopting the hearing officer's recommendations regarding child support because no evidence pertinent to child support was introduced at the hearing, and thus the trial court was unable to conduct a *de novo* review of the child support recommendation.

Upon review, we find the record before us does not contain sufficient evidence to support the judgment regarding child support.  A child support award is determined pursuant to La. R.S. 9:315.2.  La. R.S. 9:315.2(A) provides that "Each party shall provide to the court a verified income statement showing gross income and adjusted gross income, together with documentation of current and past earnings."  None of these required documents were introduced at the January 30, 2020 hearing before the trial court judge.  Furthermore, La. R.S. 9:315.2(D) provides: "The court shall determine the basic child support obligation amount from the schedule in R.S. 9:315.19 by using the combined adjusted gross income of the parties and the number of children involved in the proceeding, but in no event shall the amount of child support be less than the amount provided in R.S. 9:315.14."  Without the required documentation, this Court cannot determine whether the trial judge erred in calculating the child support award.  *See*, State, Dep't of Children & Family Servs. ex rel. L.R. v. Haines, 11-84 (La. App. 5 Cir. 5/6/11), 67 So.3d 515,

516; <u>State of Louisiana, Department of Social Services and Jessica Rareshide v. Lehman</u>, 06-922 (La. App. 5 Cir. 4/11/07), 955 So.2d 738.

Appellate courts are courts of record and may not review evidence that is not in the appellate record. La. C.C.P. art. 2164; <u>Denoux v. Vessel Mgmt. Servs., Inc.</u>, 07-2143 (La. 5/21/08), 983 So.2d 84, 88. Because the parties did not introduce evidence regarding child support for this Court to review, we vacate the trial court's judgment to the extent Ms. Beninate is ordered to pay child support. On remand, child support should be awarded based on the guidelines in La. R.S. 9:315.2 *et seq.* after the parties have submitted the requisite documentation.

**DECREE**

Considering the foregoing, we affirm the trial court's judgment except as to the child support award. We vacate the judgment to the extent Ms. Beninate is ordered to pay child support, and remand this matter to the trial court to determine child support pursuant to La. R.S. 9:315.2 *et seq.*, after the parties have submitted the requisite documentation.

**AFFIRMED IN PART; VACATED IN PART; REMANDED**

SUSAN M. CHEHARDY
CHIEF JUDGE

FREDERICKA H. WICKER
JUDE G. GRAVOIS
MARC E. JOHNSON
ROBERT A. CHAISSON
STEPHEN J. WINDHORST
HANS J. LILJEBERG
JOHN J. MOLAISON, JR.

JUDGES

CURTIS B. PURSELL
CLERK OF COURT

NANCY F. VEGA
CHIEF DEPUTY CLERK

SUSAN BUCHHOLZ
FIRST DEPUTY CLERK

MELISSA C. LEDET
DIRECTOR OF CENTRAL STAFF

(504) 376-1400
(504) 376-1498 FAX



## FIFTH CIRCUIT
## 101 DERBIGNY STREET (70053)
## POST OFFICE BOX 489
## GRETNA, LOUISIANA 70054
www.fifthcircuit.org

## <u>NOTICE OF JUDGMENT AND CERTIFICATE OF DELIVERY</u>

I CERTIFY THAT A COPY OF THE OPINION IN THE BELOW-NUMBERED MATTER HAS BEEN DELIVERED
IN ACCORDANCE WITH **UNIFORM RULES - COURT OF APPEAL, RULE 2-16.4 AND 2-16.5** THIS DAY
**DECEMBER 23, 2020** TO THE TRIAL JUDGE, CLERK OF COURT, COUNSEL OF RECORD AND ALL PARTIES
NOT REPRESENTED BY COUNSEL, AS LISTED BELOW:

**CURTIS B. PURSELL**
CLERK OF COURT

## 20-CA-206

### <u>E-NOTIFIED</u>
24TH JUDICIAL DISTRICT COURT (CLERK)
HONORABLE DONALD A. ROWAN, JR. (DISTRICT JUDGE)
REBECCA HUSKEY (APPELLEE)

RICHARD L. DUCOTE (APPELLANT)

ALICIA EDMOND WHEELER (APPELLEE)

### <u>MAILED</u>
VICTORA MCINTYRE (APPELLANT)
ATTORNEY AT LAW
318 EAST BOSTON STREET
2ND FLOOR
COVINGTON, LA 70433

DAVID J. SMITH, JR. (APPELLEE)
ASSISTANT DISTRICT ATTORNEY
LOUISIANA DEPARTMENT OF JUSTICE
1885 NORTH THIRD STREET
BATON ROUGE, LA 70802

TERRI M. MILES (APPELLEE)
ATTORNEY AT LAW
830 3RD STREET
GRETNA, LA 70053

HONORABLE JEFFREY M. LANDRY
(APPELLEE)
ATTORNEY GENERAL
LOUISIANA DEPARTMENT OF JUSTICE
1885 NORTH 3RD STREET
6TH FLOOR, LIVINGSTON BUILDING
BATON ROUGE, LA 70802